## Yazoo & M. V. R. Co. *v.* Fitzgerald.

[95 South.   746.   No. 23184.]

1. Taxation.   *Tax collector not entitled to penalty from delinquent taxpayer before resort by collector to distress or other statutory methods of enforcing payment.*

Section 2197, Code of 1906 (section 1882, Hemingway's Code), authorizing tax collectors to receive "ten per centum on all taxes collected after the fifteenth of December, by distress or otherwise," does not provide a penalty on the delinquent taxpayer, but compensation to the tax collector for services rendered in collecting the taxes, and since the words "or otherwise," following the word "distress," must be considered as *ejusdem generis,* the collector is not entitled to such compensation where the taxes are paid or tended before a resort by him to distress or some of the other statutory modes for enforcing payment of delinquent taxes, although the collector may have been prevented from resorting to such coercive measures by an injunction against the collection of the taxes.

2. Taxation.   *Mere entry of assessment and amount of taxes due on special delinquent list delivered to sheriff's deputies held not to constitute collection or legal commencement of process; "collection by distress or otherwise."*

The mere entry of an assessment and the amount of taxes due thereon on a special delinquent list prepared for the information and convenience of a sheriff's deputies in collecting delinquent taxes, and the delivery of such list to a deputy, with instructions to him to proceed to collect the taxes by distress, does not constitute a collection of the taxes "by distress or otherwise," or the legal commencement or initiation of such process.

Appeal from circuit court of Coahoma county.

Hon. W. A. Alcorn, Jr., Judge.

Suit by W. H. Fitzgerald, Jr., against the Yazoo & Mississippi Valley Railroad Company. From the judgment rendered, defendant appeals, and plaintiff cross-appeals. Affirmed on cross-appeal, and reversed and dismissed on direct appeal.

*H. S. Minor, Chas. N. Burch,* and *F. H. Montgomery,* for appellant.

All of the cases cited by learned counsel for the sheriff support the proposition so well settled in Mississippi that the mere fact that a tax is delinquent when paid does not entitle the sheriff to the compensation here claimed and that, in order for the sheriff to be entitled to the compensation he must have actually collected the taxes through some enforcement proceeding authorized by the statute. The ten per cent allowed to the sheriff is not in any sense a penalty. With this in mind it is important to note that the brief of learned counsel does not controvert any of the following propositions:

1. On September 3, 1914, thirty-three days before the final assessment roll reached the sheriff, the railroad company, through its tax commissioner, wrote the sheriff that it was ready to pay the remaining 1913 taxes as soon as the assessment roll was sent down—"so that it will not be necessary for you to take steps to enforce collection, as each of the companies is ready and willing to pay the taxes immediately."

2. Several days before the final assessment roll reached the sheriff, on the night of October 6, 1914, Mr. Yerger, an attorney for the railroad company, called at the sheriff's office and tendered in currency the exact amount of these taxes. The sheriff did not accept this tender because the roll was not in his hands; but it was agreed that the tender should be treated as a continuing one, and the money was thereafter kept on special deposit at the Planters Bank and the identical currency was paid to the sheriff on the morning following the night when the roll reached the sheriff.

3. The railroad company was therefore ready, willing and anxious to pay the taxes from the moment the litigation concerning them was ended, made every effort to pay

them' before the roll was received by the sheriff and actually paid them within a few hours after the roll was received.

4. With respect to the taxes paid in May, 1914, the sheriff admits that he did nothing whatever towards enforcing the collection thereof, beyond consulting his attorneys. Those taxes were not even put on the delinquent list.

5. With respect to the taxes paid in October, 1914, the final payment, all the sheriff claims to have done was to make up, for his own convenience, a list of the delinquent taxes from his books and sent his deputy to the office of his attorneys for legal advice. Before anything further was done the sheriff himself recalled his deputy, and received the taxes.

It would seem to be a harsh rule that would force a taxpayer to pay an additional ten per cent of the taxes on the theory that a resort to enforcement proceedings was necessary when the admitted fact is that the taxpayer was doing all he could to make payment and actually made payment within a few hours after the roll was reached.

Much of the brief of learned counsel seems to proceed on the theory that the railroad company was guilty of wrong in having invoked the aid of the courts in determining the validity of the assessment against it. This resort to the courts is referred to as a "gerrymandering." Such a theory is wholly untenable. Every tax-payer has the inherent and constitutional right to submit to the courts questions as to whether judicial determination is believed to be necessary. The final decree in this case was a decree of a court of competent jurisdiction and was voluntarily approved and ratified by the learned counsel representing the state. That decree did not award damages on the injunction bond and did not require the payment of interest on the taxes, from which the inference is unavoidable that there was some merit in the contentions made by the railroad company in the case.

*Maynard Fitzgerald* and *Venable,* and *Green & Green,* for appellee.

One branch of this case has been before the court in *Y. & M. V. R. R. Co.* v. *Edwards, Sheriff,* 72 So. 202, wherein the court, without opinion, held that the sheriff was entitled to recover his commissions. That case, however, differs from this in that there was a levy for the taxes by the sheriff and replevin of the property by the company. However, the same injunction proceedings were there involved as are here involved.

The appellee could not proceed to distrain for taxes in May, 1914, on the assessment roll because the roll was, under the injunctive decree, not to be sent nor certified, but only the amount was to be certified, and hence the appellee was restrained by this gerrymandering of the lawful process for the collection of taxes from receiving the writ upon which he could make the distress. Appellee sought to enforce his right to commissions on the payment of May, 1914, but was advised by counsel that it would be a violation of the injunction to proceed to levy and thus bring himself in contempt of the federal court.

22 Cyc. 1011 states the rule that agents and other employees who have knowledge that an injunction has been served upon their principal, must obey the injunction while continuing the employment "although they themselves were not served," and "public officers and others acting in legal proceedings are guilty of contempt in doing acts prohibited by the court and are punishable therefor." And even parties not parties to the suit may be guilty of a contempt for doing an act which he knows has been prohibited by injunction. Id. 1012. And the advice of counsel is no defense except in litigation. 22 Cyc. 1020. *Sugg* v. *Thrasher,* 30 Miss. 135, in principle is applicable.

Just as here, there was no actual levy for the taxes, but the injunction prevented the levy, and hence liability for the commissions. See also *Work* v. *Harper, et al.,* 31 Miss. 109-10, and *Hyman* v. *Seaman, et al.,* 33 Miss.

185.   The authorities in our brief show that although not named specifically in the injunction bond, the appellee was restrained by the injunction and comes within the class of persons who are entitled to recover on the injunction bond, citing 22 Cyc. 1027.

"All defendants who have been enjoined and have obeyed the injunction and who, in consequence of the allowance of the injunction and their obedience thereto, have suffered loss, can claim and recover damages," and as stated, 22 Cyc. 1043.   "The action, it has been decided, may be brought by an injunction defendant not named in the bond, by one not served in the injunction suit, or by one of a class enjoined."

The other matters stated in the briefs of counsel by appellant have been covered, as we think, by the brief for appellee, and hence iteration not necessary.

Cook, J., delivered the opinion of the court.

W. H. Fitzgerald, Jr., formerly sheriff of Coahoma county, instituted suit against the Yazoo & Mississippi Valley Railroad Company to recover the statutory ten per cent. commission for the collection of delinquent taxes upon the assessment for the year 1913.   From a judgment awarding the plaintiff one thousand eighty-six dollars and twenty-eight cents on account of delinquent taxes paid by the defendant in October, 1914, and denying the plaintiff the right to recover four thousand seven hundred eight dollars and seventeen cents and interest on account of delinquent taxes paid in May, 1914, the defendant railroad company prosecuted an appeal, and the plaintiff prosecuted a cross-appeal.

The plaintiff, W. H. Fitzgerald, Jr., was the sheriff and tax collector of Coahoma county, Miss., in 1913 and 1914. On September 2, 1913, the railroad company filed its bill in the United States District Court at Jackson against the State Railroad Commission and the auditor of public accounts to enjoin them from certifying to the various tax

collecting offices of the state the assessment and classification of its property for the year 1913. The bill also charged that the privilege taxes sought to be collected by the state were void, and on the filing of the bill a temporary restraining order was granted. Thereafter the case was heard before three judges, on the application for a preliminary injunction, and on May 13, 1914, pursuant to an opinion rendered by those judges, an order was entered dismissing the bill so far as it applied to the *ad valorem* assessment for 1913, but sustaining its attack upon the validity of the privilege taxes of that year. From this order both parties prayed and were allowed appeals to the supreme court of the United States. It was ordered, however, that the appeal should not suspend the collection of the taxes for 1913 on the whole assessment attacked, but only on the difference between that assessment and the assessment for the year 1912, and the Railroad Commission was ordered to certify to the various tax collecting officers an assessment for 1913 taxes equal to the assessment for 1912. The assessment was certified in accordance with this decree, and the taxes due thereon in Coahoma county were paid by the railroad company on May 30, 1914.

In September, 1914, a final decree was entered in the tax injunction case in the United States district court, based on a compromise between the parties, under the terms of which the railroad company agreed to pay the privilege taxes for 1913, which that court had declared to be invalid, and further agreed to pay the *ad valorem* taxes for 1913 on the basis of the assessment which the original bill had attacked. In consideration of this compromise and settlement, both appeals to the United States supreme court were dismissed. Under the terms of this settlement no damages on the injunction bond were asked or awarded, and the decree expressly provided as follows:

"The decree shall not prejudice the rights of the tax collectors (if they have any) to collect (under section 2197 of Mississippi Code) fees or damages on account of the

delay in payment of 1913 *ad valorem* taxes, nor is this decree to be taken as a recognition that the tax collectors have any such rights, but said matter of damages is intended only to be left and is left unadjudicated and undetermined by this decree, the complainant denying that any right to damage exists."

The plaintiff's declaration, which was in two counts, set out in detail the history of this injunction suit in the United States court, and averred that the taxes due by the railroad company became delinquent on the 15th day of December, 1913, and that plaintiff was thereupon vested with authority to collect the same by distress or otherwise, and that his right to recover the ten per cent. commissions prescribed by section 2197, Code of 1906 (section 1882, Hemingway's Code), thereupon accrued; that he had been prevented from proceeding to collect said taxes by levy and distress by reason of said injunction, and in the second count of the declaration he sought to recover these commissions as damages on the injunction bond.

The material facts are undisputed. The plaintiff testified that he advised with counsel in regard to the collection of the taxes due by the railroad company, and that he was advised that on account of the injunction he could take no steps to enforce collection; that prior to the payment of forty-seven thousand, eighty-one dollars and seventy-eight cents in May, 1914, he took no steps whatever to enforce collection of the taxes; that on the day he received this payment and issued the receipt therefore he addressed a letter to the railroad company saying:

"I am issuing this tax receipt only because I do not desire to be in contempt of the United States court, and in doing so do not intend to waive any claim for damages, as stated. I will have my attorneys examine the decision as to my rights in this matter and will make levy, if possible, for the damages."

The consent decree was entered in the United States district court on September 1, 1914, and on the 3d day of September the railroad company's tax commissioner wrote

the plaintiff that the company was then ready to pay the remaining taxes for 1913 as soon as the proper classifications from the secretary of the Railroad Commission were made, and that it would not be necessary for him to take any steps to enforce collection, as the company was ready and willing to pay the taxes immediately. Thereafter, and prior to October 7, 1914, E. M. Yerger, an attorney for the defendant company, went to the sheriff's office in the city of Clarksdale, and tendered to Maj. Chapman, a deputy sheriff who was in charge of the office at the time, the sum of seven thousand, four hundred sixteen dollars and thirty-eight cents, the balance due by the railroad company for taxes for the year 1913. Mr. Yerger testified that at the time he made this tender the sheriff had no assessment roll or statement of the taxes due, as the Railroad Commission had not up to that time certified the assessment to the chancery clerk; that Maj. Chapman refused to accept the sum tendered; that he (Yerger) requested Maj. Chapman to agree that the seven thousand four hundred sixteen dollars and thirty-eight cents might be deposited in the Planters' Bank for safe-keeping, and that the tender thereof might be treated and accepted as a continuing tender, until he should be advised by the Railroad Commission of the amount of taxes due; that Maj. Chapman thereupon consulted an attorney and then agreed that the money tendered might be placed in the Planters' Bank, and that it would be received by them as a continuing tender, until they were advised of the amount due; that the said package of money was then deposited in the Planters' Bank as a special deposit; that, having learned on the morning of the 7th of October, 1914, that the sheriff's office had received the proper certification from the Railroad Commission, he again carried the seven thousand, four hundred sixteen dollars and thirty-eight cents cash to the sheriff's office and tendered it in full settlement of the taxes due; that, after some discussion of his right to claim the ten per cent. damages, the sheriff accepted the amount tendered, but expressly reserved his right to claim

these damages, and so noted on the tax receipt then issued.

The plaintiff testified that, when he received this assessment on the night of the 6th or the morning of the 7th of October, he immediately entered it on a delinquent list in a small book which was used by his deputies for the purpose of collecting delinquent taxes; that he instructed a deputy to proceed at once to levy on property of the defendant company; that this deputy proceeded to the office of his attorney for advice and instructions as to procedure; that while this deputy was at the office of this attorney, Mr. Yerger, attorney for the railroad company, appeared at the sheriff's office and tendered the amount of the taxes due; that his deputy was then recalled to the sheriff's office by telephone; that he then accepted the money for the taxes due, but expressly reserved his right to claim an additional amount as statutory damages or commissions.

We think the questions presented by this appeal have been settled contrary to the contentions of appellee and cross-appellant by former decisions of this court. Section 2197, Code of 1906 (section 1882, Hemingway's Code), provides that the tax collector shall be allowed "ten per centum on all taxes collected after the fifteenth of December, by distress or otherwise," and it has been held in a number of cases that this ten pen cent. is in no sense a penalty, but is purely compensation to the tax collector for services rendered, and is never due unless the tax has been collected "by distress or otherwise." *Railroad Co.* v. *Love,* 69 Miss. 109, 12 So. 266; *Anderson* v. *Hawks,* 70 Miss. 639, 12 So. 697; *Miller* v. *Land Co.,* 74 Miss. 110, 20 So. 875. In *Anderson* v. *Hawks, supra,* it was held that the words "or otherwise," as used in this statute, must be construed as applying to matters *ejusdem generis* as the preceding particular words "by distress," and consequently, where no action has been taken by the collector to coerce payment of the taxes, he is not entitled to recover the per cent. although the taxes were not paid or tendered until after December 15th.

As to the payment of forty-seven thousand, eighty-one dollars and seventy-eight cents which was made in May, 1914, the appellee admits that he took no coercive action to enforce collection, but seeks to escape the force of these decisions on the ground that he would have instituted coercive proceedings if he had not been prevented from so doing by reason of the injunction issued by the Federal district court, and that, since the defendant company caused the issuance of the injunction which prevented him from exercising his right to proceed "by distress or otherwise," his right to the commissions had accrued. This contention leads us into the realm of speculation as to what might have happened if the injunction had not been issued. We may as well presume, and it is quite as probable, that if the injunction had not been issued, the taxes would have been paid before they became delinquent. Howsoever that may be, the fact remains that no coercive action was taken or begun, and the collector had performed no duty or services in the collection of these taxes which entitled him to this extra compensation, and the judgment of the court below denying a recovery of the per cent. on this collection is manifestly correct.

As to the payment of seven thousand, four hundred sixteen dollars and thirty-eight cents which was made on October 7, 1914, the appellee contends that the entry of the amount of taxes due on a delinquent list was the beginning of coercive proceedings to enforce collection thereof. We do not think there is any merit in this contention. This entry was made immediately upon receipt from the Railroad Commission of the proper certification of the assessment. Prior to that time the railroad company had attempted to pay these taxes, but was unable to do so on account of the fact that the assessment had not been received from the Railroad Commission. It is true and it was so held in *Miller* v. *Land Co., supra,* that there is no point in a proceeding by distress, or other proceeding provided by law for the collection of taxes, once begun, at which it

may be said that the right to the compensation has attached rather than at another. ' In the case at bar, however, the entry on the purported delinquent list was not made on any book or record which the sheriff was required by law to keep, but the assessment was entered on a special list which was simply for the convenience of the sheriff's deputies in collecting delinquent taxes.   A deputy sheriff had been instructed to proceed to collect these taxes by distress, and he had gone to the office of an attorney for advice, but no further steps had been taken before the taxes were paid, and we do not think this constituted a collection of the taxes "by distress or otherwise," or the legal commencement or initiation of such proceedings, or that appellee had performed any duty or services in the collection of these taxes which would entitle him to recover upon either count of the declaration.

It follows from the views herein expressed that the judgment of the court below will be affirmed on the cross-appeal, and, on direct appeal, it will be reversed, and the cause dismissed.

*Affirmed on cross-appeal, and reversed and dismissed on direct appeal.*