## EASTERWOOD v. HENDERSON COUNTY et al.

### No. 1717—6433.

Commission of Appeals of Texas, Section A.

June 23, 1933.

Bishop & Holland and Wynne & Wynne, all of Athens, for plaintiff in error.

E. A. Landman and H. B. Green, Co. Atty., both of Athens, W. M. Harris, of Dallas, and W. H. Graham, of Houston, for defendants in error.

HARVEY, Presiding Judge.

In this suit, the plaintiff in error, John W. Easterwood, a resident taxpayer of Hender-son county, seeks to have declared void a certain contract made between Henderson county, on one hand, and R. B. De Witt and W. M. Harris, on the other; and to enjoin the carrying out of said contract. Henderson county, De Witt, Harris, and various officials of the county are made parties defendant.

The contract in question was made on September 21, 1931. The commissioners' court of Henderson county acted for the county in making such contract, but the contract has never been approved by the state comptroller or the Attorney General. The contract calls for the installation, by De Witt and Harris, of a complete plat book system for the county, as provided by the act of 1931 hereinafter set out, and for their assistance in the collection of all delinquent taxes. It is provided in the contract that for the compensation for their services in preparing and installing the plat book system De Witt and Harris are to receive "15% of all delinquent taxes, collected from and after the date of this contract, except state delinquent taxes, until the sum of Eighty Thousand Dollars of County School District, Road District, and other political subdivisions or defined district taxes that are collected through the tax collector of said county has been collected, and 5% thereafter."

That portion of the contract providing for the compensation to be paid for assisting in the collection of delinquent taxes reads as follows: "For said services of second parties in performing obligations set out in paragraphs XIV and XVII, inclusive, and to enable second parties to properly perform said services and to furnish all material and supplies necessary to complete said work there shall be paid to the said second parties the penalties and interest of all delinquent taxes, except State delinquent taxes, actually collected from and after the date of this contract and during the term thereof, contingent upon the collection of said delinquent taxes, penalties and interest as and when collected until the sum of Eighty Thousand Dollars of County, road district, school district and other district delinquent taxes, penalties and interest which receive their taxes through the Tax Collector of said County has been collected and five per cent. of said penalties and interest thereafter.".

The vital question for decision is whether or not the contract in question is authorized by law.

The power to provide for the collection of delinquent taxes, and prescribe the compensation to be paid for services rendered in that respect, resides exclusively in the Legislature. Under this power, the commissioners' court of a county may be granted authority to make binding contracts looking to the collection of delinquent taxes, and to the

payment of a part of the collections, as compensation for services performed in that respect. Cherokee County v. Odom, 118 Tex. 288, 15 S.W.(2d) 538; Commissioners' Court v. Wallace, 118 Tex. 279, 15 S.W.(2d) 535. Except as given by statute, a commissioners' court is powerless to contract in the respects mentioned. The statutes pertinent to this controversy are contained in an act passed in 1931 (Regular Session, chapter 229 [Vernon's Ann. Civ.-St. art. 7264a]) and an act passed in 1930 (Fourth Called Session, chapter 8 [Vernon's Ann. Civ. St. art. 7335a]).

The act of 1931 reads as follows:

"Section 1. It is hereby declared the Policy of the State to adjust delinquent taxes, correct errors, to eliminate conflicts in surveys of land, and to collect the delinquent, occupation, franchise and Ad Valorem Taxes, in order to clear this State of such taxes, errors and conflicts at the earliest date possible, and to provide a system for assessors, in order to eliminate the numerous errors that now appear on the tax rolls each recurring year.

"Sec. 2. Cost of collecting delinquent taxes shall not exceed the amount of the penalty and interest, or an amount equal to such penalty and interest of all delinquent taxes collected. Any county desiring to install a tax or plat system and clear the county of errors, conflicts and unknown owners, may do so by paying not to exceed 15% of the delinquent taxes collected, which payment shall cover the cost of records and installing same.

"Sec. 3. In order to speedily carry out the provisions of this Act, the State Comptroller and the Commissioners' Court of each of the several counties may employ competent persons to do the work and to furnish the Comptroller and the Commissioners' Courts all cases where adjustment is necessary; and in all such cases the Commissioners' Court shall make proper settlement or adjustment.

"Sec. 4. This Act is not intended to change any law now in effect regarding the collection of delinquent taxes, but to be an aid to the officials in the discharge of their duties, and when the delinquent taxes in a county are adjusted, corrected and collected, the Comptroller shall take necessary steps to see that all delinquent taxes are collected within a reasonable time after they become delinquent, in order to avoid the necessity of again employing additional help.

"Sec. 5. The fact that officials have let State taxes become delinquent to the amount of approximately $20,000,000.00, most of which can be collected by adjustment and correction of errors, and the further fact that counties where land conflicts causes millions of dollars of property to appear on the tax rolls that does not exist, which facts show the necessity for a tax system, and the fur-

ther fact that the State and counties are in need of their money, creates an emergency and a public necessity exists requiring the suspension of the Constitutional Rule that requires bills to be read on three several days, and said Rule is hereby suspended and this Act shall take effect on the date of its passage, and it is so enacted."

The act of 1930 reads as follows:

"Section 1. No contract shall be made or entered into by the Commissioners' Court in connection with the collection of delinquent taxes where the compensation under such contract is more than fifteen per cent. of the amount collected. Said contract must be approved by both the Comptroller and the Attorney General of the State of Texas, both as to substance and form. Provided however the County or District Attorney shall not receive any compensation for any services he may render in connection with the performance of the contract or the taxes collected thereunder.

"Sec. 2. Any contract made in violation of this Act shall be void."

■ It is to be observed that the last-mentioned act provides in effect that any contract made or entered into by the commissioners' court in connection with the collection of delinquent taxes shall be void unless same be approved, both as to form and substance, by the state comptroller and the Attorney General. The contract involved in this controversy is clearly one "in connection with the collection of delinquent taxes," and, since same was not approved by the state comptroller and the Attorney General, it is void. As already pointed out, the authority in the commissioners' court to contract with respect to collection of delinquent taxes proceeds from the Legislature, and is subject to such limitations as the Legislature sees fit to prescribe. Nothing is to be found in the act of 1931, which can be construed as dispensing with the approval of the comptroller and the Attorney General which is made a requirement by the other act. On the contrary, the act of 1931 expressly provides that same "is not intended to change any law now in effect regarding the collection of delinquent taxes." Section 4 (Vernon's Ann. Civ. St. art. 7264a, § 4).

■ Furthermore, the provisions of the 1931 act do not purport to authorize the imposing of any liability against the county except in conjunction with a liability against the state. This contract does not conform to the authority conferred by the act. For this reason, the contract would be void, as being unauthorized by the act, even though same had been approved by the comptroller and the Attorney General.

We recommend that the judgment of the Court of Civil Appeals, reversing the trial

court's judgment, be reversed, and that the judgment of the trial court be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.