**WHITE v. McGILL, Judge, et al.**

No. 3673.

Court of Civil Appeals of Texas. El Paso.

Nov. 11, 1937.

Rehearing Denied Nov. 18, 1937.

Peticolas & Peticolas, of El Paso, for appellant.

D. E. Mulcahy, Co. Atty., and Leon Kotosky, Asst. Co. Atty., both of El Paso, for appellees.

WALTHALL, Justice.

On the 31st day of July, 1937, the county of El Paso, Tex., entered into a contract with C. H. Armstrong, Chas. Levy, W. E. Arnold, H. F. Bennett, and Sam Blumenthal, hereinafter referred to as "tax ferrets," by the terms of which the tax ferrets agreed to point out to the tax assessor and collector of El Paso county, prior to October 1, 1937, personal property which the owners had failed to assess for the year 1937 or years prior thereto and which the tax assessor and collector had not discovered. If the state joined in the contract, the tax ferrets were to be paid 15 per cent. of the full amount of state and county taxes actually collected on personal property pointed out by them. But if the state refused to join in such contract, the compensation was to be 25 per cent. of the full amount of the county taxes actually collected. The commissioners' court was to order the county attorney to file suits for the collection of such taxes on the personal property so assessed. The tax ferrets were required to first point out to the commissioners' court personal property found by them, and that body was given the right to determine what property should be assessed and placed on the rolls. C. H. Armstrong was to be in charge of the tax ferrets with the right to discharge any of them.

The contract was not approved by the Comptroller and Attorney General of the State of Texas.

Thereafter on the 7th day of August, 1937, James C. White, a resident taxpaying citizen of El Paso county, Tex., filed suit against the county of El Paso, Tex., Joseph McGill, county judge of said county, Moliere Scarborough, John Andreas, W. W. Hawkins, and L. J. Ivey, county commissioners of said county, and the tax ferrets above named, asking that the contract above mentioned be declared null and void and for an injunction restraining said parties from carrying out same. Plaintiff alleged the execution of the contract, that the parties thereto recognized same as a valid contract and were proceeding under it, the failure of the county to secure the approval of the Comptroller and Attorney General of the State of Texas; that the contract was null and void because it was not approved by the Comptroller and Attorney General and because the compensation therefor was in excess of 15 per cent. of taxes collected, which conditions were necessary to the validity of a contract in connection with the collection of delinquent taxes; that the defendant would, if not restrained, carry out said contract and the defendant county and county commissioners would pay out moneys to the defendant tax ferrets under said contract. Plaintiff prayed that rule to show cause issue and that on hearing thereof a temporary injunction be granted restraining and enjoining the defendants from carrying out said contract, and that on final hearing said contract be adjudged null and void and the temporary injunction prayed for be made permanent.

Rule to show cause issued commanding the defendants to appear on the 11th day of August, 1937, to show cause why such temporary injunction should not be granted.

The defendants filed their original answer by which they admitted the execution of said contract, but denied that same was in connection with the collection of delinquent taxes. Plaintiff filed his supplemental petition alleging that the contract was void even if applicable to current taxes, and that by the terms of the contract the commissioners' court was empowered to pass on what property should be placed on the tax rolls, and that it intended to discriminate between some kinds of personal property by taxing notes and mortgages and other evidences of indebtedness not containing a clause requiring the borrower to pay such tax, but not taxing such notes and mortgages and other evidences of indebtedness that contained the clause requiring the borrower to pay such tax; that the contract was in the furtherance of a discriminatory and illegal plan of taxation. Plaintiff prayed, in addition to the prayer in his original petition, for an injunction restraining the defendant tax ferrets from disclosing to the tax assessor and collector any information they had obtained and that they be enjoined from proceeding under said contract; that the county commissioners be restrained from disclosing to the tax assessor and collector information obtained from the tax ferrets. Defendants filed their first supplemental answer, which consisted of a general demurrer and general denial.

After hearing on the temporary injunction, the court issued its temporary injunction restraining and enjoining the defendant county, the county judge, and the county commissioners from paying out any moneys under said contract either as expenses or as consideration for services performed by said tax ferrets pending the final disposition of the cause.

Thereafter defendants filed their first amended original answer by which they admitted the execution of the said contract but denied that same was in connection with the collection of delinquent taxes.

The cause came on for final hearing on the 7th day of September, 1937, and it was agreed that same should be tried on the same pleading and evidence as was offered at the hearing on the temporary injunction with the additional admission that the plaintiff was a resident taxpaying citizen of El Paso county, Tex. After such hearing the court entered judgment dissolving the temporary injunction theretofore granted, and denied all relief prayed for by the plaintiff.

The case was tried without a jury. The trial court filed findings of fact and conclusions of law. The pertinent features of the court's findings are, substantially, as follows:

Plaintiff James C. White is a resident taxpaying citizen; defendants entered into the contract referred to in the pleadings, and which contract is incorporated herein; defendants were acting under the contract with intention to carry same out; it is the individual intention of members of the commissioners' court "not to list for taxation any property found by the other defendants, where the provision was that the payor of the obligation pay any taxes that might be assessed."

The trial court, in the conclusions of law, held, in effect, that the contract in question was not in connection with the collection of delinquent taxes, and, for that reason, was not a contract inhibited by law, the contract not having been approved by the Comptroller or Attorney General, and being in excess of 15 per cent. of the taxes, and stated other conclusions.

### Opinion.

Appellant submits error in the trial court's holding that the contract in question is not one in connection with the collection of delinquent taxes, and for that reason the court should have enjoined the carrying out of the contract involved.

The contract in question is referred to as the "ferret contract," and C. H. Armstrong and others contracting with him, parties of the second part in the contract, are referred to as "tax ferrets."

The pertinent portions of the contract provide that the tax ferrets "agree to point out to the Tax Assessor and Collector of El Paso County, Texas, prior to October 1st, 1937, personal property which the owner or owners, or their legal representatives have either failed or refused to assess their taxes for the year 1937, or years prior thereto, and such property is not on the County tax rolls and have never been discovered or found by the said Tax Assessor and Collector of El Paso County and placed on said rolls, so that the Assessor and Collector can place same on current rolls for 1937." The contract provides that the ferrets agree to furnish such proof to the tax assessor and collector that such property should be legally assessed and the taxes collected for 1937 and prior years, with description of the property subject to such tax to enable the assessor and collector to make a legal assessment of same. The contract reserves to the commissioners' court the right to determine what property is assessable and should be placed on the tax rolls, and what is not assessable and should be omitted therefrom, and the decision of the court is made final. The contract then provides that if the state joined in the contract, the tax ferrets were to be paid for their services 15 per cent. of the full amount of state and county taxes actually collected on such personal property as has been pointed out by them and assessed as stated; but if the Comptroller or the Attorney General refused to join in such contract, the compensation was to be 25 per cent. instead of 15 per cent.

There can be no doubt that prior to the effective date of Acts of 1930, 41st Legislature, 4th Called Session, page 9, chapter 8, now article 7335a of the Vernon's Ann.Civ. St., the commissioners' court had the power to make the contract in question without the approval of the Comptroller or Attorney General.

Appellant does not controvert that statement, but insists that the contract is one in connection with the collection of delinquent taxes, and is void under above article 7335a, the contract not having been ap-

proved by either the Comptroller or Attorney General.

The only question presented is whether the contract in question is inhibited by article 7335a. The article provides:

"Delinquent tax contracts.

"Sec. 1. No contract shall be made or entered into by the Commissioners' Court in connection with the collection of delinquent taxes where the compensation under such contract is more than fifteen per cent of the amount collected. Said contract must be approved by both the Comptroller and the Attorney General of the State of Texas, both as to substance and form. Provided however the County or District Attorney shall not receive compensation for any services he may render in connection with the performance of the contract or the taxes collected thereunder.

"Sec. 2. Any contract made in violation of this Act shall be void."

Appellant refers us to the cases of Easterwood v. Henderson County (Tex. Com.App.) 62 S.W.(2d) 65, and Sylvan Sanders Company v. Scurry County (Tex. Civ.App.) 77 S.W.(2d) 709, 710, and submits that the cases are in point and decisive of the question presented here.

■ Without reviewing here the two above cases at length and the contracts there before the court, we have concluded they are not decisive of the instant case. There the contract in each case, made by the commissioners' court, was in connection with the collection of delinquent taxes, and, under the facts of each, made void under the articles of the statute referred to. As we view the cases they have no reference or application to contracts made with reference to the assessment of property for taxation never rendered or found on the tax rolls, unknown to the tax assessor, and hence not delinquent. As said by the court in one of the cases, referring to the Act of 1930, "the language * * * is clear and unambiguous."

The contract in the instant case we view as one made in anticipation that such property might be found, and if found, was then subject to the decision and action of the commissioners' court, and, if found taxable, it would then be in connection with the assessment of property for taxation, and of property never rendered or placed or found on the tax rolls.

Contracts substantially the same as the one here, and having the same purpose, were before the courts in the following cases, and in which the courts held that the commissioners' court had the implied power to contract: Von Rosenberg v. Lovett (Tex.Civ.App.) 173 S.W. 508, 509 (writ refused); Roper v. Hall (Tex.Civ.App.) 280 S.W. 289; Rusk County v. Maloney (Tex. Civ.App.) 38 S.W.(2d) 868 (writ refused); Federal Royalty Co. v. State (Tex.Civ. App.) 42 S.W.(2d) 670, affirmed by the Supreme Court 124 Tex. 290, 77 S.W.(2d) 1021, 80 S.W.(2d) 741. We refer also to articles 7206, 7211, 7212, re-enacted substantially in the same language as they formerly were.

■ Unless the holdings in the above cases are affected by article 7335a, as contended by appellant, the commissioners' court has the power to employ and pay for service in searching for and ferreting out personal property omitted from the tax rolls. Under the contract, such property as is there contemplated, must first be found, must be found taxable, and then reported to the assessor for assessment. An assessment of property is an indispensable prerequisite to the validity of a tax, and involves the preparation of a list of the property subject to assessment and taxation; then follow in order a levy, the collection, etc., each a separate and distinct step in the process of taxation. Republic Ins. Co. v. Highland Park Ind. School District (Tex.Civ.App.) 57 S.W.(2d) 627 (the opinion by Justice Higgins of this court.)

In Bridgeport Hydraulic Co. v. City of Bridgeport, 103 Conn. 249, 130 A. 164, 168, the court said: "The collection of a tax is not an element of the assessment. It is subsequent thereto, and assumes a valid tax."

In Yazoo & M. V. Ry. Co. v. Fitzgerald, 131 Miss. 905, 95 So. 746, the court said: "The mere entry of an assessment and the amount of taxes due thereon on a special delinquent list, * . * * does not constitute a collection of the taxes 'by distress or otherwise,' or the legal commencement or initiation of such process."

We think that in a contract to perform a service inhibited by article 7335a, the contract itself should clearly designate that it is one "in connection with the collection of delinquent taxes," and not leave the

contract open to suggestion and speculation.

We have concluded that the contract before us is not such as is inhibited by article 7335a, it not having been approved by the Comptroller and Attorney General.

The case is affirmed.