JAMES C. WHITE v. JOSEPH McGILL, COUNTY JUDGE, ET AL.

No. 7360. Decided March 23, 1938.
(114 S. W., 2d Series, 860.)

*Peticolas & Peticolas,* of El Paso, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that before a contract can come within the terms of the statute (Art. 7335a) it must provide that it is "in connection with the collection of delinquent taxes," because the substance of the contract prevails over the form in deciding whether it comes within the statute. Madison County v. Wallace, 118 Texas 279, 15 S. W. (2d) 535; Easterwood v. Henderson County, 62 S. W. (2d) 65; Cherokee County v. Odom, 118 Texas 288, 15 S. W. (2d) 538. .

*David E. Mulcahy,* County Attorney, *Harold L. Sims* and *Leon Kotosky,* Assistants County Attorney, all of El Paso, for defendants in error.

The contract to ferret out and discover personal property which has not been assessed or rendered for the current and prior years so as to place same on the current tax roll, is not a contract in connection with the collection of delinquent taxes. Hanrick v. Hanrick, 54 Texas 101; Clegg v. State, 42 Texas 605; Fire Assn. of Philadelphia v. Love, 101 Texas 376, 108 S. W. 158.

MR. JUSTICE SHARP delivered the opinion of the Court.

This case presents the sole question whether the contract involved here, relating to the assessment for taxation of personal property situated in El Paso County, Texas, not having been approved by the Comptroller and the Attorney General of the State of Texas, is declared void by virtue of S. B. 57, Chapter 8, 41st Leg., 4th Called Session, and Article 7335a, Vernon's Annotated Texas Civil Statutes.

James C. White, a resident taxpayer of El Paso County, Texas, filed suit against the County of El Paso, Joseph McGill, county judge of said county, Moliere Scarborough, John Andreas, W. W. Hawkins, and L. J. Ivey, Charles Levy, W. E. Arnold, H. F. Bennett, and Sam Blumenthal, who will be described in this opinion as tax ferrets, asking that a certain contract entered into by the county and the tax ferrets be declared void, and for an injunction restraining the parties from carrying out

same. The case was tried without a jury. The trial court held that the contract did not violate Article 7335a, and that it was enforceable. The Court of Civil Appeals affirmed the judgment of the trial court. 109 S. W. (2d) 1102.

The facts are undisputed. On July 31, 1937, the County of El Paso entered into a contract with C. H. Armstrong, Charles Levy, W. E. Arnold, H. F. Bennett, and Sam Blumenthal, such contract being called a "tax ferret contract," under the terms of which the tax ferrets agreed to perform certain duties in the way of pointing out property for taxation. Among other things, the contract contained the following sections:

"That said parties of the second part agree to point out to the Tax Assessor and Collector of El Paso County, Texas, prior to October 1st, 1937, personal property which the owner or owners, or their legal representatives have either failed or refused to assess their taxes for the year 1937, or years prior thereto, and such property is not on the County tax rolls and has never been discovered or found by the said Tax Assessor and Collector of El Paso County and placed on said rolls, so that the Assessor and Collector can place same on current roll for 1937.

"That said parties of the second part further agree to furnish such proof to the said Tax Assessor and Collector that such personal taxes should be legally assessed and taxes collected thereon for 1937 or prior years, together with a legal description of property subject to such personal property tax so as to enable the Assessor and Collector to make a legal assessment of same.

"FOR AND IN CONSIDERATION of the services rendered by the said——————————, as hereunto stated, the Commissioners' Court of El Paso County, Texas, hereby agree to pay the said——————————, parties of the second part, a fee of fifteen (15) per cent of the full amount of State and County taxes actually collected on such personal property as has been pointed out by them and assessed as hereinbefore stated.

"IT IS FURTHER expressly agreed and understood by and between the parties, that in the event the State Comptroller or the Attorney General refuse to allow payment of a percentage of State taxes actually collected as aforesaid, then and in that event, in lieu of the consideration above mentioned, their compensation shall be as follows:

"FOR AND IN CONSIDERATION of the services rendered by the said——————————, as hereunto stated, the Commissioners'

Court of El Paso County, Texas hereby agree to pay the said ——————————, parties of the second part, a fee of twenty-five (25) per cent of the full amount of the County taxes actually collected on such personal property as has been pointed out by them and assessed as hereinbefore stated.

"And the said Commissioners' Court will order the filing of suits by the County Attorney of El Paso County, Texas to enforce the payment of any such personal taxes so assessed, as is provided in Article 7297, of the Revised Civil Statutes of 1925, when in the judgment of the Court such taxes are collectable."

It will be noted that the contract authorized the payment of fifteen per cent. of the full amount of the state and county taxes actually collected on personal propery pointed out by the tax ferrets, if the contract would be approved by the Comptroller and Attorney General. In the event that the Comptroller and Attorney General refused to join in such contract, then the amount to be paid by the County of El Paso was to be twenty-five per cent. of the full amount of county taxes actually collected on personal property pointed out. The Comptroller and the Attorney General failed to approve the contract, and the tax ferrets therefore limit their claim to the part of the contract which stipulates the payment of twenty-five per cent. of the county taxes actually collected on personal property pointed out by them.

Prior to the enactment of Articles 7264a and 7335a it was legal for the commissioners' court of a county to make a contract for the collection of delinquent taxes without the approval of the Comptroller and Attorney General, by virtue of Articles 7335 and 7344 of the Revised Civil Statutes of 1925. Von Rosenberg v. Lovett, 173 S. W. 508 (writ refused); Roper v. Hall, 280 S. W. 289; Rusk County v. Maloney, 38 S. W. (2d) 868 (writ refused); Federal Royalty Co. v. State, 42 S. W. (2d) 670; Madison County v. Wallace, 118 Texas 279, 15 S. W. (2d) 535; Cherokee County v. Odom, 118 Texas 288, 15 S. W. (2d) 538. Acting under the prior statutes, many counties executed contracts for the collection of delinquent taxes which shocked the public conscience as being unfair and exorbitant. Those contracts were upheld by the courts on the ground that the statutes then in force authorized the execution of such contracts. Immediately after the opinions were announced in some of the foregoing cases, wherein it was held that the then existing statutes authorized the commissioners' courts to execute such contracts, the Legislature took steps to declare the public

policy of this State with respect to the collection of delinquent taxes.

The Legislature dealt with the situation by the enactment of Article 7335a in 1930 and Article 7264a in 1931, Vernon's Annotated Texas Civil Statutes. Article 7335a reads: "Section 1. No contract shall be made or entered into by the Commissioners' Court in connection with the collection of delinquent taxes where the compensation under such contract is more than fifteen per cent. of the amount collected. Said contract must be approved by both the Comptroller and the Attorney General of the State of Texas, both as to substance and form. Provided however the County or District Attorney shall not receive any compensation for any services he may render in connection with the performance of the contract or the taxes collected thereunder.

"Sec. 2. Any contract made in violation of this Act shall be void."

In Article 7264a it is again announced as the public policy of the State that the cost of collecting delinquent taxes shall not exceed fifteen per cent. of the delinquent taxes collected; and it also provides that the State Comptroller and the commissioners' court of each county may employ competent persons to do such work.

In order to avoid the execution of contracts calling for excessive and unreasonable compensation, the Legislature enacted the foregoing articles, and limited the compensation to be paid thereunder to an amount not to exceed fifteen per cent. of the amount collected. Furthermore, in Article 7335a it required the contract to be approved "by both the Comptroller and the Attorney General of the State of Texas, both as to substance and form." The Act further provides that, "Any contract made in violation of this Act shall be void."

1 The object in construing any statute is to ascertain from the language used in the statute the intention of the Legislature. This Act should be construed in connection with other laws relating to the assessment and collection of taxes. The Legislature found that the laws then on the statute books permitted contracts to be made, with respect to the collection of delinquent taxes by county officers, that were unfair and unjust to the public. It was desired that such evils should be stopped. Hence the Legislature enacted these articles for that purpose, and limited the compensation to be paid in an amount not to exceed fifteen per cent. of the sum. collected. It also further provided that such contracts must be approved by both the Comptroller

and the Attorney General, and unless such contracts were executed in compliance with the provisions of the Act, same should be void.

2   It is contended that the Legislature did not intend, when it referred to contracts executed "in connection with the collection of delinquent taxes," to embrace a contract like the one before us. Let us test this contention with the terms of the contract, as though we were assuming that statement to be true. The contract provides, in plain terms, that the parties agreed to point out to the officials of the County of El Paso, prior to October 1, 1937, "personal property which the owner or owners, or their legal representatives have either failed or refused to assess their taxes for the year 1937, or years prior thereto, and such property is not on the County tax rolls and has never been discovered or found by the said Tax Assessor and Collector of El Paso County and placed on said rolls, so that the Assessor and Collector can place same on current roll for 1937." A reading of the contract clearly shows that the parties expected to locate personal property which had not been assessed for the year 1937, or years prior thereto, so that such property could be placed on the current roll for 1937.

This contract does more than provide for the pointing out of personal property for assessment for the year 1937. It contemplates not only the pointing out of such property for taxation for the year 1937, but also adds "or years prior thereto." Moreover, the contract contemplates the collection of such taxes by voluntary payment; or, if necessary, that they be collected by suit filed by the county attorney. And finally, it provides that payments shall be made to the tax ferrets out of the taxes actually collected.

Article 7208 makes it the duty of the tax assessor to assess personal property theretofore not on the tax rolls for the current year and for every year for two years past; and under this article the personal property pointed out to the tax officials would be taxed not only for the year 1937, but also for the years 1935 and 1936. This would clearly indicate that the contract is considered as one in connection with the collection of delinquent taxes.

3   The Legislature has the sole power to provide for the collection of delinquent taxes and to fix the compensation to be paid for such services. It is also true that the commissioners' courts derive their power to execute contracts with respect to the collection of delinquent taxes exclusively from the statutes.

Easterwood v. Henderson County, (Tex. Com. App.) 62 S. W. (2d) 65.

When the purpose for which Article 7335a was passed is considered, we do not think the Legislature used the words "delinquent taxes" in a technical sense. We think it clearly appears that the Legislature intended by the enactment of this law to check the evil then existing, and not only to specify the maximum compensation to be paid, but also to require that such contracts should be approved by both the Comptroller and the Attorney General of Texas, in order to make them valid. Easterwood v. Henderson County, (Tex. Com. App.) 62 S. W. (2d) 65; Sylvan Sanders Company v. Scurry County, (Tex. Civ. App.) 77 S. W. (2d) 709.

Whether this contract embraces the assessment and collection of taxes on personal property for only one year or for more than one year, if valid it must find support in some article of the statutes. Articles 7335 and 7344 form the basis to support the contracts upheld in the decisions above cited, executed prior to the enactment of Articles 7264a and 7335a. Article 7344 refers to real estate and the method of its assessment. Article 7335 has been amended by adding Article 7335a thereto. This article, as amended, requires contracts to be approved by the Comptroller and the Attorney General, in order to make them binding. We are unable to find any article of the statutes on which such contract can be based; nor have counsel cited any such article of the statutes which does sustain it. Therefore we conclude that the contract involved here is governed by the provisions of Article 7335a. The Comptroller and the Attorney General having failed and refused to approve such contract, it is therefore void.

The judgments of the trial court and Court of Civil Appeals are reversed, and judgment is hereby rendered for plaintiff in error, declaring such contract to be void.

Opinion delivered March 23, 1938.