

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Arnold Smith
County Attorney
Montgomery County
Conroe, Texas

Dear Sir:

Opinion No. O-5302
Re: Validity of contract for the
listing and valuation of oil
properties in Montgomery County.

In your letters of May 13, 1943 and June 8, 1943, you requested our opinion on the above stated question. The contract in question provides:

"KNOW ALL MEN BY THESE PRESENTS:

"THAT, WHEREAS, the Commissioners' Court of Montgomery County, Texas, has contemplated the employment of skilled experts in the matter of appraisals and valuation of oil and gas and public utilities properties in the said Montgomery County, for the convenience and information of the Board of Equalization of said County in equalizing the valuations of such properties as compared with all other property valuations in said County for assessment purposes; and

"WHEREAS, PRITCHARD AND ABBOTT, a Partnership of Fort Worth, Texas, represent that they are skilled in such matters and have scientific and technical knowledge and many years' experience in the matter of appraisals and valuations of such properties for assessment, and it is the purpose of the Commissioners' Court of Montgomery County to employ the services of the said PRITCHARD AND ABBOTT for said purposes, and

"WHEREAS, PRITCHARD AND ABOTT have proposed to said Commissioners' Court of said Montgomery County that they will assist the Tax-Assessor-Collector in the preparation of Oil and Gas and Public Utility properties assessments and advise with the Court as to the value of all oil and gas and public utility properties for the year 1944 for a fee of Eleven Thousand ($11,000.00) Dollars.

"IT IS, THEREFORE, AGREED BY AND BETWEEN MONTGOMERY County, Texas, acting herein by and through its Commissioners' Court, part of the First Part, and PRITCHARD AND ABBOTT of Tarrant County, parties of the Second Pard, as follows:

"PARTIES OF THE SECOND PART agree to compile a complete list of the record owners of all Oil and Gas producing properties wherever situated and located in Montgomery County, Texas, and all undeveloped leases and royalty interest adjacent thereto, as of January 1, 1944, said compilation and record to show the particular interest or interests therein owned.

"PARTIES OF THE SECOND PART also agree to secure for Party of the First Part, all information available for the use of Parties of the First Part, sitting as a Board of Equalization, in determining the proper valuation to be fixed upon such properties for assessment and taxation purposes and generally to compile such information as shall be of aid and benefit to said Party of the First Part in equalization of the value of such properties for taxation.

"Said parties of the Second Part agree to meet with the Commissioners' Court of Montgomery County, sitting as a Board of Equalization, and to furnish said Board with all information secured by them during their investigations for the purposes of equalizing the assessments on said properties. Parties of the Second part also obligate themselves to make a survey of all pipe lines, refineries, tank farms, tankage, and all other properties of value used in connection with said oil and gas development, including transportation facilities, etc.

"FOR AND IN CONSIDERATION of the skilled services, technical knowledge, and experience of Parties of the Second Part, in the performance of the obligations devolving upon them hereunder, Party of the First Part agrees and obligates itself to compensate Parties of the Second Part in the manner following:

"Second Parties shall receive an amount to be paid out of the General Fund of Montgomery County, Texas in the sum of Eleven Thousand ($11,000.00) Dollars covering oil and gas and public utility properties, including leases and royalty interests.

"It is further agreed and understood by both Parties that Montgomery County, Texas, will issue, or cause to be issued to PRITCHARD AND ABBOTT, warrants drawn against the General Fund of said Montgomery County, Texas, and payable out of the revenues of 1944, and/or the anticipated revenues of 1945, as follows:

"Seven Hundred and Fifty ($750.00) Dollars on the first day of December 1943, and on the First days of January, February, March, April, May, and June, 1944.

"AND upon completion of said work for the year 1944, and after final action has been taken by the Board of Equalization, a Warrant or Warrants drawn against the GENERAL FUND of MONTGOMERY COUNTY, TEXAS, shall be issued t to PRITCHARD AND ABBOTT, for compensation due, if any, making the total compensation equal to Eleven Thousand ($11,000.00) Dollars.

"IT IS AGREED AND UNDERSTOOD by both Parties that in no way will Montgomery County be obligated to PRITCHARD AND ABBOTT, or their assistants for salaries, expenses, or material used in connection with said work, except as above stated.

"THE TOTAL AMOUNT OF OIL field and public utility properties shall be certified by the Tax Assessor, who shall in his Certificate state the total valuation of all such properties assessed for the year 1944 and all said warrants issued to PRITCHARD AND ABBOTT shall be registered for payment and payable out of the receipts and anticipated receipts from the taxes levied for General County purposes and from other sources coming into the said General Fund for the year 1944, and to provide for the payment of said warrants, such an amount of money as is necessary for said purposes is hereby set aside and appropriated out of the money in, or w ich shall come into, the said General Fund.

"WITNESS OUR HANDS in duplicate this the 16th day of April A. D. 1943."

This contract is virtually in haec verba with a contract the validity of which was upheld in Roper v. Hall, 280 S.W. 289 (1925) (no application). In upholding the contract the Waco Court of Civil Appeals pointed out that no express authority to enter into such contracts is conferred upon the Commissioners' Courts, but added:

> "No provision is made by the statutes for aiding the assessor in discovering unrendered property, nor for securing a proper description thereof, nor for ascertaining its actual ownership. No standard of value for use in making assessments is prescribed except the assessor's own opinion. No special qualifications are prescribed to make a man eligible to hold such office. Evidently the law contemplates such discharge of the duties of that office as may be expected from a man of ordinary experience and capacity. It has made no express provision for extraordinary cases. . . . Express authority, however, is given to the commissioners' court over the subject of levying of taxes and requiring all property situated in the county to be properly assessed and to bear its proportion of the burden of taxation according to its value. . . . The general powers so given to the commissioners' courts are of little practical value without the further authority to use adequate means to insure the proper, intelligent and effective exercise thereof. The Constitution requires and public policy demands that all taxable property shall contribute its just proportion to the expenses of government. The purpose of the contract under consideration was to aid in securing such result. The services contracted to be rendered called for information and experience not possessed by the ordinary person. So far as they affected the discovery, assessment, and unrendered oil properties, they could not have been performed by the county assessor unless he possessed extraordinary information and experience along the required lines. He testified in the case, and under oath disclaimed such qualifications. Neither could the commissioners' court, sitting as an equalization board, perform its functions effectively without such expert aid. The court so declared, in effect, when it entered the contract. . . ." (Emphasis added)

As can be seen from this quotation, the Waco Court held that the contract related in part to the "discovery, asssessment, and valuation of unrendered oil properties" and that such portion of the contract not only was itself valid, , but also gave support to the general validity of the contract. This decision was rendered in 1925 prior to the passage of Acts 1930, 41st Legislature, 4th C.S., p. 9, ch. 8 (Article 7335a, V.A.C.S.) which provides in part:

> "No contract shall be made or entered into by the Commissioners' Court in connection with the collection of delinquent taxes whre the compensation under such contract is more than fifteen percent of the amount collected. <u>Said contract must be approved by both the Comptroller and the Attorney General of the State of Texas, both as to substance and form . . .</u>" (Emphasis added)

Our courts have since repeatedly held that contracts relating to the collection of delinquent taxes are void unless approved as required by the above Article. Easterwood v. Henderson County, 54 S.W. (2d) 897 (Comm. App.); White v. McGill, 131 Tex. 231, 114 S W. (2d) 860; Marquart v. Harris County, 117 S.W. (2d) 494 (dismissed, judgment correct). Consequently, while we are bound by the holding of Roper v. Hall, supra, to the effect that contracts of this kind relate in part to the collection of delinquent taxes, we are forced by Article 7335a, V. A.C.S., and the above cited cases to conclude that such contracts are now void unless approved by the Comptroller and the Attorney General. Moreover, the holding in Roper v. Hall that such contracts do relate in part to the collection of delinquent taxes has since found support in the collowing statement by our Commission of Appeals:

> "When the purpose for which Article 7335a was passed is considered, we do not think the Legislature used the words 'delinquent taxes' in a technical sense." White v. McGill, supra.

Since the contract in question never received the approval of the Comptroller and the Attorney General, the portions of the contract relating to the collection of delinquent taxes necessarily are void; however, it is settled that in contracts of this kind the portions of the contract are so interrelated that the invalidity of a part causes the entire contract to fall. Marquart v. Harris County, supra; Aldrich v. Dallas County, 167 S.W. (2d) 560 (dismissed). Consequently, we are constrained to hold that the entire contract in question is invalid by reason of the principles and authorities above stated.

This conclusion makes unnecessary a consideration of the serious questions of whether a contract of this kind involves an attempt by the commissioners' court to circumvent the prohibition against acting initially on assessments other than those submitted by the tax assessor (Marquart v. Harris County, supra, at p. 503; Aldrich v. Dallas County supra, at p. 565) and whether the contract involves an attempt to accomplish the prohibited purpose of vesting in others the duties which the law confers upon the tax assessor (Terrell v. Greene, 88 Tex. 539, 31 S.W. 631, 634; 34 Tex. Jur. p. 444); and loc. cit. supra.

In your letter of June 8, 1943, you state:

". . . the Commissioners' Court of Montgomery County did not make any provisions for levying and collecting a sufficient tax to pay any interest and to provide at least 2% as a sinking fund, etc., at the time of the execution of the contract."

This statement was made with reference to that portion of Section 7 of Article XI of our Constitution, providing:

"But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund; . . ."

In Stevenson v. Blake, 113 S.W. (2d) 525, the Commission of Appeals said:

"The term 'debt' as used in said clause of the Constitution 'means any pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation.' McNeal v. City of Waco, 89 Tex. 83, 33 S.W. 322, 324; City of Corpus Christi v. Woessner, 58 Tex. 462, 467; Foard County v. Sandifer, 105 Tex. 420, 151 S.W. 523; City of Houston v. Glover, 40 Tex. Civ. App. 177, 89 S.W. 425; Tackett v. Middleton, Tex. Com. App. 280 S.W. 563, 44 A. L. R. 1143." (Emphasis ours)

In this case, certain attorneys employed by the commissioners' court under a contract dated July, 1935, were to be paid as follows: "One Thousand $1,000.00) Dollars in cash upon the signing of this contract; One Thousand ($1,000.00) Dollars on February 15, 1936; and One Thousand ($1,000.00) Dollars when judgment became final in said cases." With reference to these payments, the Court said:

"At the time the contract here in question was made, statutes existed in keeping with this authority whereby ad valorem taxes generally, for the year 1935-- including county taxes for general county purposes-- became payable October 1, 1935, but no penalty for non-payment attached prior to February 1, 1936. Perhaps these considerations supply a firm foundation for the contention of the plaintiffs in error to the effect that all said taxes for general county purposes which were paid prior to the last mentioned date constituted "current revenues' of the county for the year 1935, and that the presumption arises that the parties to the contract contemplated, at the time same was made, that the sum of $1,000, which was to become due February 15, 1936, would be paid from these revenues. Be this as it may, the fact remains that this sum did not constitute the entire obligation of the county which the contract purports. The clause of the Constitution which has been s et out regards as an entirety the pecuniary obligation undertaken to be imposed by the contract, and unless the parties

reasonably contemplated at the time the contract was made, that same would be wholly satisfied out of current revenues for the year 1935, or out of some fund then within the control of the commissioners' court, the entire obligation is void. (Citing cases) The pecuniary obligation undertaken to be imposed on the county by the contract includes the payment of the sum of $1,000 'when judgment becomes final in said cases.' The contract, fairly construed in the light of the circumstances, shows that the parties did not definitely contemplate that this last-mentioned sum would be paid, when it falls due, from current revenues for the year 1935. . . . Under the authorities as we interpret them, the test is, Did the parties, under the circumstances, reasonably contemplate that the sum mentioned would in fact become due at such a time?"

See also the opinion of the Court of Civil Appeals in this case, 88 S.W. (2d) 773.

The instant contract was executed on April 16, 1943, and payments to the contractors were to be made by warrants "payable out of the revenues of 1944, and/or the anticipated revenues of 1945 as follows: Seven Hundred and Fifty ($750.00) Dollars on the first day of December, 1943, and on the First days of January, February, March, April, May, and June, 1944. AND upon completion of said work for the year 1944, and after final action has been taken by the Board of Equalization, a Warrant or Warrants drawn against the General Fund of MONTGOMERY COUNTY, TEXAS, shall be issued to PRITCHARD AND ABBOTT, for compensation, due, if any, making the total compensation equal to Eleven Thousand ($11,000.00) Dollars." Unlike the obligations in the cases of Commissioners' Court of Madison County v. Wallace, 118 T x. 279, 15 S.W. (2d) 535, and McClintock & Robertson v. Cottle County, 127 S.W. (2d) 319. (dismissed), the obligation in the instant contract is not contingent upon the success of the contractors in the undertaking which they assume, nor is such obligation so uncertain in amount as to make impossible the provision of a sinking fund; unlike the obligation in Ward v. City of Big Spring, 161 S.W. (2d) 821, reversed on other grounds, 169 S.W. (2d) 151, in the instant case the contingency which creates the obligation is not solely within the control of the county; unlike the obligation in Underwood v. Howard, 1 S.W. (2d) 730 (dismissed) the obligation in this case is not to be discharged from taxes already assessed.

Since the instant contract expressly provides that payments are to be made out of the "revenues of 1944, and/or the anticipated revenues of 1945," it is impossible to answer the test established in Stevenson v. Black, supra, by saying that at the date of the contract, the parties then contemplated that the obligation would be satisfied out of the current revenues for the year or out of some fund then within the immediate control of the corporation.

Consequently, if we should be mistaken in the conclusion first stated above, you are respectfully advised that the contract is invalid by reason

of its creation of a debt in contravention of Section 7 of Article XI of the Texas Constitution.

Trusting that the foregoing fully answers your inquiries, we are

Ve y t ruly yours

ATTORNEY GENERAL OF TEXAS

By /s/ R. Dean Moorhead

R. Dean Moorhead
Assistant

RDM:ff:egw

APPROVED JUNE 21, 1943
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION COMMITTEE
BY B W B
Chairman