**MARQUART et al. v. HARRIS COUNTY et al.**

No. 10794.

Court of Civil Appeals of Texas. Galveston.

May 12, 1938.

Rehearing Denied May 25, 1938.

Bracewell & Spiner, of Houston, for appellants.

E. S. Pritchard, Dan W. Jackson, Cr. Dist. Atty., Marshall T. Anderson, Asst. Cr. Dist. Atty., and Ernest A. Knipp, all of Houston, for appellees.

E. R. Campbell, of Houston, for J. W. Hall.

Fred Parks, of Houston, for R. H. Spencer.

GRAVES, Justice.

Appellants, as property taxpayers, brought this suit against Harris County, its Commissioners, and Tax Assessor-Collector, praying for an order restraining them, until trial on the merits, (1) from proceeding (in whole, or alternatively in part) with a property-valuation contract between the County and two firms of individuals, as experts, of all the taxable property in Harris County, dated March 14 of 1938 and later supplemented—a substantial copy of the original being appended hereto as an exhibit—[1] and (2) from paying out thereon any of the county's funds. It was alleged that J. W. Hall, Tax Assessor, and one of the Commissioners, R. H. Spencer,

[1] EXHIBIT A

The State of Texas, County of Harris
Know All Men by These Presents:

Whereas, The Commissioners' Court of Harris County desires to employ skilled experts in the matter of the discovery, appraisal, and valuation of property in Harris County, Texas, of the types now being assessed in said County for taxation to the end that said Court may equalize the values thereof and place upon the rolls of Harris County properties of said types now escaping taxation and desires to eliminate so far as possible unknown ownerships and to have compiled for its use and the use of its Assessor and Collector of Taxes records showing the record owners of all property in said County including those producing oil and gas, which records and information among other things are needed to guide said

Court when it sits as a Board of Equalization in order that all of the property in said County of said types shall be assessed for taxation and equalized in accordance with the mandates of the Constitution and statutes of the State of Texas, said Court being unable to discharge and perform the said duties encumbent upon it as a Board of Equalization without such expert assistance in such matters; and,

Whereas, The Court finds from an examination of the tax rolls of Harris County that there are many properties listed upon such rolls the owners of which are unknown and numerous properties appearing upon said rolls are assessed at unreasonably low and unequal values; and,

Whereas, The Court finds that much property in said County is entirely escaping taxation and that because of conflicts

had opposed the contract, and they were made parties-defendant. The contractors undertaking to do the valuation work, namely, the firms of Freese & Nichols and Pritchard & Abbott, were also made parties-defendant. Defendants Spencer and

in ownerships and claims to property and otherwise the full amount that could be realized as taxes is not being realized by said County; and,

Whereas, The Commissioners' Court of said County desires to set up and place into effect a more efficient plan and system to aid in the assessment of property for taxation and to aid in the adjustment, collection, and equalization of taxes generally; and,

Whereas, The Commissioners' Court of said County after having considered said matter and subject as a whole for a great number of months, and after having advertised generally throughout Texas for bids for the performance of such services, and having received and considered the bids and offers of many persons and firms offering to perform such services, and being fully advised in the premises, at a meeting held on the fourteenth day of March, 1938, for such purpose found that the firm of Freese and Nichols, a co-partnership composed of S. W. Freese and M. C. Nichols, was qualified as to skill, ability, and experience to better perform the services needed by said County than any other persons whose services were available or tendered, and the Court accordingly entered its order on the premises so finding and declaring, and authorizing the execution of this contract on behalf of the County by its undersigned County Judge, for the consideration and on the terms and conditions hereinafter set out.

Now, therefore, This instrument is executed to witness the following contract by and on behalf of Harris County, a body politic and corporate and hereinafter referred to as the County, on the one part; and Freese and Nichols, a co-partnership composed of S. W. Freese and M. C. Nichols, both of Tarrant County, Texas, hereinafter called the Contractors, on the other part, to-wit:

For and in consideration of the sum of one hundred thirty-five thousand dollars ($135,000) to be paid by said County to said Contractors at the times and in the manner and upon the conditions hereinafter set out agree to supply to and do and perform for said County all and singular the following, to-wit:

I. *Oil, Gas, and Mineral Properties:* The Contractors agree to make in writing an analytical appraisal of each and every piece of real property in said County producing oil and/or gas, whether held under fee title, mineral deed, lease, or royalty assignment, or otherwise, which shall show the value of each such interest as of

January 1, 1938. The Contractors shall furnish a detailed inventory of all personal property on each piece of property in said county producing oil and/or gas whether held under lease or operated by a fee owner. The Contractors agree to make a survey of all pipe lines, tank farms, tankage, and all other properties of value in said County used in connection with oil and gas development in said County, including transportation facilities, et cetera. The Contractors agree to furnish said County with individual oil fields maps of suitable scale appropriately and clearly showing the lease and fee ownership in each pool located within the County.

It is agreed and understood that the foregoing shall include all undeveloped leases, and royalty interest in properties immediately adjacent to any properties producing oil and/or gas in said County. It is also understood and expressly agreed that the Contractors in a similar manner will appraise and value and report on the value of all mineral deposits in said County though not presently producing, and will supply full and complete geological data and information necessary to sustain their valuation and report on all property in said County producing oil and/or gas or known to be mineral bearing, whether the same be presently producing or not, which shall include among other things all salt domes known to exist in said County.

It is further agreed that the report and analysis above required shall be so prepared as to show the name of each and every person or corporation owning an interest in the leasehold or the royalty estate or the mineral fee, the amount of such interest and the value thereof.

II. *Public Utilities and Industrial Plants:* The Contractors agree to make an inventory and valuation of all properties of all railroad and public utility corporations in Harris County, Texas, including easements and machinery, as well as property of all industrial or manufacturing plants on properties in said County, including all easements and franchises enjoyed in such County, in such form and manner as to enable the Commissioners' Court of said County to arrive at the true value of all such properties for tax purposes.

III. *Personal Property:* The Contractors agree to diligently search for, survey, identify the owner of, and make an appraisal of, all personal property in said County of the type now generally assessed for taxation therein, showing the value

Hall joined in as party-plaintiffs by separate pleadings, praying that the injunction be granted. The court heard testimony at length before entering the order appealed from, whereby the temporary writ so sought was refused. From that order, the Taxpayers and Spencer appeal, naming all the other parties as appellees.

of all such property as of January 1, 1938.

IV. *Land Valuation*: The Contractors agree to furnish the services of experts in systematic methods of land and building valuation to complete a land and building valuation survey for the entire County, and file a complete report of said land and building values ·for the use of the Board of Equalization and the Assessor and Collector of Taxes. The real estate experts so employed, aside from the members of the Houston Real Estate Board after the submission to the Court of a list of not less than double the number of men proposed to be employed in order that the County may approve or disapprove the fitness for the purpose of the men sought to be employed. It is agreed that not less than seventy-five per cent. of the number of persons employed in the work contemplated under this contract shall be residents of Harris County, Texas.

Said Contractors shall ascertain and determine the value of each tract and parcel of land in Harris County and the improvements thereon, and shall file separate reports on all property and improvements within the City of Houston and on all property and improvements lying within Harris County outside of the city limits of the City of Houston. The Contractors shall complete the computation of the respective values and submit the same to the Court together with all necessary information and supporting data with respect to same. The Contractors shall classify farm lands in each piece of property as to the amount of acreage that is cultivated, tillable, pasturage, or waste. The Contractors shall furnish land record cards of each lot and parcel of land showing the dimensions of the lot, the block number, the addition or subdivision, the ownership, and information relating to land valuation and the method of computation thereof both as to city and rural lands, lots, and improvements.

V. *Building Manual*: The Contractors agree to compile a building manual for Harris County which shall contain a picture, specifications, area, and price per square foot of each class of building in Harris County to conform in all respects to the sample submitted and filed with the County Auditor.

VI. *Abstract Sheets*: The Contractors agree to furnish abstract sheets showing each lot or parcel of land, the total valuation of such lot or parcel, the total valuation of the building or buildings thereon, and the total of land and buildings, such abstract sheets to conform in all respects to the sample submitted.

VII. *County Maps*: The Contractors shall compile and furnish to Harris County:

1. One set of section maps drawn on a scale of 1000 feet to one inch, showing the blocks and subdivision of surveys platted and numbered, so as to identify each tract. Where tracts have been subdivided into town sites or additions, they are to be platted on suitable scale. Section maps will show ·the owner of each tract, number of acres, classification of the land, and value of each tract. Improvements will be shown on maps by symbol for each tract,

2. One large map for each Commissioner's precinct, showing property lines and classification of lands, and number of acres in each class; and

3. One set of maps showing all pipe lines.

VIII. *City Maps*: The Contractors agree to furnish Harris County:

1. One set of section maps of land as held in present ownership, compiled on a scale of 100 feet to one inch from the records of the Assessor's and Engineer's offices, from County records, or from other necessary sources, checked and corrected to conform to the actual existing conditions, showing in addition to the size and location of every lot and parcel of land, its appraised value and the unit-foot values upon which the computation of the value of each parcel of land is made. The maps shall also show the value of the building improvements, if any, on each lot; the lot and block numbers; street names; section map numbers; and numbers of the adjoining section maps.

2. One set of section maps, blue line prints, made on a scale of 100 feet to one inch, showing by symbol the location of every taxable building.

3. One index map showing the number of each section map.

4. One set of district unit-foot maps of city areas, showing block outlines, block numbers, section map numbers, street names, and unit foot frontage prices. These maps are to be used in submitting unit-foot values for comment and criticism and for the careful checking of the relations of values block by block, street by street, and district with district, thus insuring the equalization of land values within the entire area.

IX. *Central Business District Map*: The Contractors agree to compile one large map on a scale of 100 feet to the

117 S.W.2d—32

The sued-upon contract, in its entirety, was not only a part of the pleadings, but of the evidence as well; while it does not otherwise appear from the record here whether the Comptroller and Attorney General of the State *failed* or *refused* to approve it, it is affirmatively shown on the face of the contract itself (hence as a part

inch, comprising the central business district and semibusiness area. In addition to showing the front foot unit value, it will show on each lot or parcel of ground the 100% land value in one color, the 100% building value in different color.

X. *Ownership*: The Contractors agree to ascertain the ownership of each tract of land from the records of the Assessor and Collector of Taxes and the County Engineer, and other sources available to him; but he shall not be obliged to abstract each separate tract of land unless there is a reasonable indication from all of the facts before him that the ownership as shown by the County records is incorrect. Reasonable diligence shall be required in each instance to show the correct present ownership of all property listed by the Contractor. He shall likewise use all the reasonable diligence to ascertain the correct ownership and address of the owners of all property now carried as "unknown" on the County records; and in any instance where he shall be requested specially so to do by the Commissioners' Court, he shall abstract property to ascertain the names of the owners, provided that such special requests shall not exceed five per cent. of the total tracts in the County.

XI. *Miscellaneous*: The intention of this contract is that all properties subject to taxation of the types now generally taxed in Harris County shall be embraced in the terms of this contract whether specifically set forth herein or not, and on any of such types the Contractors shall appraise the same and file a report thereon in the manner and form prescribed generally for other properties so far as applicable.

XII. *Expert Testimony Before the Board of Equalization*: It is understood that the Commissioners' Court of said County will meet and sit as a Board of Equalization at the time and in the manner required by law, and after meeting will remain in session until it has finally passed upon all values that have been submitted by the Contractors. Regardless of the duration of the Board's session, the Contractors will furnish without cost to the County, the necessary experts to testify in upholding and substantiating the valuations fixed by the Contractors in each unit of valuations as reported by them to the Court. It is further understood that if the Contractors shall fail to value any property and report the valuations fixed by them thereon to the Court before the termination of such session, the same will have to be considered by the Court when it sits as a Board of Equalization in the year 1939, and as to all properties not so valued and reported upon before the end of the aforesaid first meeting of the Court, the Contractors will furnish the necessary experts to testify during the Court's 1939 session in upholding and substantiating the values fixed by the Contractors on the various properties to be appraised by the Contractors, regardless of when the Court shall meet in 1939 or how long its session in 1939 may continue.

Should the contractors fail or refuse to furnish expert testimony before said Board of Equalization, the County shall have the right to employ at the expense of the Contractors and their bondsmen such experts as shall, in the opinion of the Commissioners' Court, be necessary for such purposes, and the findings of such Court as to the number of experts needed for such purposes and the reasonableness of their rates of pay shall be final and conclusive and binding upon the Contractors and their bondsmen.

XIII. *Expert Testimony in Law Suits*: The Contractors agree to furnish without cost to the County expert testimony in the matter of any and all suits that may be filed and reached for trial before May 1, 1939, which suits in any manner contest the correctness or validity of any assessment made pursuant to any information furnished by the Contractors. All such assistants so furnished shall have the necessary experience and background to qualify as highly specialized technical experts. After May 1, 1939, the Contractors shall be paid for expert testimony in case of suit on matters arising from valuations fixed by the Board of Equalization at its session 1938 the sum to be agreed upon not to exceed $50 for each day or part thereof of testimony actually required, plus necessary actual living and traveling expenses of the witness testifying, and in case the Contractors furnish expert testimony in cases of suits contesting assessments resulting from reports made by the Contractors and passed upon by the Board of Equalization in 1939 on real estate assessments, said Contractors will furnish until April 30, 1940, testimony free of charge, provided that said Contractors shall be paid per diem when required after April 30, 1940, at a rate of not to exceed $50. a day or part thereof plus the actual and necessary living

of both pleadings and proof) that neither of these officers did in fact approve it. Only the parts of the long document deemed most material to this opinion will be specially adverted to.

In the preamble it is recited that it is desired to, as far as possible, eliminate unknown ownership, to have compiled, for the use of the Assessor, records showing the record-owners of all property, and

and traveling expenses of the person testifying.

XIV. *Orders*: The County of Harris agrees, to at any time the same may become necessary, pass and enter of record in connection with this contract such orders as may be necessary to legalize and facilitate the payment of all sums due to the Contractors hereunder, and to give or obtain for use of the Contractors. access at reasonable times to all County records essential to the accomplishment of the contract.

All expense incident to the completion of this contract shall be borne by the Contractors, and, without a limitation upon the generality thereof, shall include all equipment, supplies, transportation, salaries, rentals, fees, wages, and labor.

XV. *Records*: The Contractors shall submit to the Commissioners' Court complete records in writing for each unit of the work herein contracted, and the report as submitted together with all supporting data shall become the property of Harris County.

The Contractors shall prepare and furnish record cards containing all information and data essential to proper and correct assessments. Cards with respect to tracts and parcels of land shall contain all of the data required by this contract with respect to land valuation for each assessment.

XVI. *Time*: It is agreed and understood that time is of the essence of this contract and the Contractors shall proceed to work immediately upon the approval of this contract and the approval of their bond. The Contractors shall complete and file with the Commissioners' Court for use of the Court sitting as a Board of Equalization a complete report with respect to the valuation of personal properties, utilities and industrial plants, oil and gas properties as herein defined on or before August 1, 1939, and shall file completed reports upon land valuation separately for land and improvements within the City of Houston and land and improvements outside of the City of Houston on or before December 31, 1938. Provided that should the work upon land and building valuations not be completed on December 31, 1938, the Commissioners' Court and Contractors may at the time agree upon a reasonable extension thereof, if necessary to enable the County to receive greater benefits from the contract

and more accurate and detailed work.

Should the Contractors fail to comply with the terms of this contract with respect to the time of completion, the County shall have the right to take over and complete the contract and charge to the Contractors against any unpaid amounts, the cost of completing the same, or in the event of the insufficiency of the balance due the Contractors to complete the work, to nevertheless complete the same and the cost over and above the total amount contracted herein to be paid shall be charged against said Contractors and their bondsmen for which they shall jointly and severally be liable to the County as co-principals.

XVII. *Assignment of Contract*: The Contractors shall not assign this contract in whole or in part without the consent of the Commissioners' Court of Harris County in writing.

XVIII. *Bond*: The Contractors agree to execute with some solvent surety company authorized to do business in Texas, a good and sufficient bond in the sum of one hundred thirty-five thousand dollars ($135,000) conditioned upon the proper performance of all of this contract, said bond to be subject to the approval of the Commissioners' Court and to be filed within five days from the date of this Contract and this contract shall be and become an integral part of the bond and the bond shall be and become an integral part of this contract.

XIX. *Payment*: For the services herein to be performed by the Contractors, the County of Harris agrees to pay a total sum of one Hundred thirty-five thousand dollars ($135,000) as follows: Commencing thirty days after the commencement of the work herein agreed upon, the Contractors agree to file with the Commissioners' Court a progress report with respect to the performance of the work contracted for. Upon 'the filing of such report showing the progress with the Commissioners' Court, said Court shall authorize the issuance of valid warrants of the County for Twelve Thousand one hundred fifty dollars ($12,150), and such reports shall be filed and valid warrants issued in like manner for each succeeding thirty days for eight additional months. No such warrants shall be issued until an approximately proportionate part of the work shall have been performed to the satisfaction of the Commissioners' Court.

that the court desires to set up and place into effect a more efficient plan and system to aid in the assessment of property for taxation and to aid in the adjustment, collection, and equalization of taxes generally.

It contemplates a revaluation of all the property of Harris County, "of the types now being generally · assessed for taxation," Paragraph II, expressive of that purpose as permeating the whole, being as follows:

"The intention of this contract is that all properties, subject to taxation of the types now generally taxed in Harris County shall be embraced in the terms of this contract, whether specially set forth herein or not, and on any of such taxes, the contractors shall appraise the same and file a report thereon in the manner and form prescribed generally for other properties so far as applicable."

Other provisions, in whole or in part, are these:

From the preamble:

"Whereas, the Commissioners' Court of Harris County desires to employ skilled experts in the matter of the discovery, appraisal, and valuation of property in Harris County, Texas, of the types now being assessed in said County for taxation, to the end that said Court may * * * place upon the rolls of Harris County properties of said types now escaping taxation, and desires to eliminate so far ..as possible unknown ownerships and to have compiled for its use and the use

---

The final warrants representing an amount which will bring the total payments to one hundred thirty-five thousand dollars ($135,000) shall be issued upon the filing of the valuations and reports, provided said work has been performed in accordance with the terms of this contract. Prior to the release of the final payment the Commissioners' Court and contractors shall agree upon the bond of the Contractors thereafter to be in effect to insure the rendition of further services with respect to expert testimony and upon its receipt by the Court and approval by it, the final warrants in payment of the balance due shall. issue. All such warrants shall bear interest at the rate of two and one-half per cent. per annum and shall be payable serially in one to four years, and in approximately equal amounts.

XX. *Tax Levies*: The Commissioners' Court of Harris County, has on March 14, 1938, the same being a regular term of said Court, levied the County tax necessary to provide the funds to discharge the obligation created by the terms of this contract.

The Court further obligates itself to enter all such further orders in connection with the levy of taxes as may be necessary to properly and legally discharge any obligations created by the terms of this contract.

XXI. *Automobiles*: It shall not be necessary for the Contractors to inspect or view automobiles, but it is expressly agreed that an inspection will be made of the automobile rolls with respect to the types of cars and the valuations placed thereon by the Assessor and Collector of Taxes, and the Contractors agree to report on the present standards of valuation, and test the current roll assessed values to establish the accuracy of the present practice with the comment thereon and recommendations for establishing correct values in accordance with accepted standards for such purpose.

XXII. *Release of Reports*: It is expressly understood and agreed that neither the Contractors nor the Commissioners' Court will release any information with respect to the values placed by the Contractor upon any lot or parcel of land or improvements, or the values placed upon franchises or any other taxable properties embraced within the contemplation of this contract until such time as the Contractors have completed and filed with the Commissioners' Court their report upon the entire unit affected, the parties to this contract being of the opinion that the best interests of the County and the Contractors are served by this procedure.

XXIII. *Purchases*: The County agrees that the Contractors may have use of the Purchasing Department of the County for taking bids for stationery, supplies, and other materials in order to contact local bidders and receive the best prices and quality of such materials and supplies, and it is agreed that the purchase price thereof shall be paid by the Contractors.

Witness our hands at Houston, Texas, this March 14, 1938.

County of Harris
By: Roy Hofheinz
"County Judge
Freese and Nichols
By: S. W. Freese

This Contract was submitted to the Commissioners' Court of Harris County, Texas, on March ——, 1938, and approved.

Henry M. Dudley
County Clerk
By: (blank)

of its assessor and collector of taxes * * *;.

"Whereas, The court finds that much property in said County is entirely escaping taxation * * * and otherwise the full amount that could be realized as taxes is not being realized by said County; and

"Whereas, The Commissioners' Court of said County desires to. set up and place into effect a .more efficient plan and system to aid in the assessment of property for taxation and to aid in the adjustment, *collection,* and equalization of taxes generally."

From Paragraph III:

"*Personal Property:* The Contractors agree to diligently search for, survey, identify the owner of, and make an appraisal of, all personal property in said County of the type now generally assessed for taxation therein, showing the value of such property, as of January 1, 1938."

From Paragraph I:

"*Oil, Gas and Mineral Properties:* The Contractors agree to make in writing an analytical appraisal of each and every place of real property in said County producing oil, and/or gas, whether held under fee title, mineral deed, lease, or royalty assignment, or otherwise, which shall show the value of each such interest as of January 1, 1938. The Contractors shall furnish a detailed inventory of all personal property on each piece of property in said County producing oil and/or gas, whether held under lease or operated by a fee owner."

From Paragraph IV:

"*Land Valuation:* The Contractors agree to furnish the services of experts in systematic methods of land and building valuation tó complete a land and building valuation survey for the entire County, and file a complete report of said land and building ᵗvalues for the use of the Board of Equalization and the Assessor and Collector of Taxes."

From Paragraph XIII:

"*Expert Testimony in Law Suits:* The Contractors agree to furnish without cost to the County expert testimony in the matter of any and all suits that may be filed and reached for trial before May 1, 1939, which suits in any manner contest the correctness or validity of any assessment made pursuant to any information furnished by the Contractors. All such assistants so furnished shall have the necessary experience and background to qualify as highly specialized technical experts. After May 1, 1939, the Contractors shall be paid for expert testimony in case of suit on matters arising from the valuation fixed by the. Board of Equalization at its session in 1938, the sum to be agreed upon not to exceed $50 for each. day or part thereof of testimony actually required, plus necessary actual living and traveling expenses of the witness testifying."

From Paragraph XIV:

"*Orders:* The· County of Harris agrees to, at any time the same may become necessary, pass and enter of record in connection with this contract such orders as may be necessary."

It is the opinion of this court that such contract was ultra vires the powers of the commissioners' court, and therefore void in toto, which conclusion has been arrived at upon these, among other, considerations:

■ (1) Considered from its four corners (and especially regarding the particular provisions noted and quoted supra), it was clearly one made by the commissioners' court "in connection with the collection of delinquent taxes", within the meaning of Vernon's Ann.Civ.St. arts. 7264a and 7335a, and not having been approved by either the Comptroller or the Attorney General ·of the State, nor by both of those officials acting together, was prohibited by the express terms of those two statutes.

(2) While it was not eo nomine a delinquent tax-collection agreement, it seems self-evident that .at least one of its major purposes was to discover and place on the rolls for taxation property which had theretofore escaped taxation, hence in part its substance, objective, and necessary effect was to bring it within the construction put upon that language of the latter of these statutes, "in connection with the collection of delinquent taxes", by the Supreme Court in White v. McGill, Tex.Sup., 114 S.W.2d 860, at page 863, paragraph (5):

"When the purpose for which article 7335a was passed is considered, we do not think the Legislature used the words 'delinquent taxes' in a technical sense."

Indeed, it would seem that no substantial difference in purport and effect exists between the contract at bar and the one stricken down by the Supreme . Court in that cause—its material provisions, as comparable with. the above-quoted ones .here,

clearly showing, as that court put it: "that the parties expected to locate personal property which had not been assessed for the year 1937, or years prior thereto, so that such property could be placed on the current roll for 1937. * * * Moreover, the contract contemplates the collection of such taxes by voluntary payment; or, if necessary, that they be collected by suit filed by the county attorney." "* * * such contract being called a 'tax-ferret contract,' under the terms of which the tax-ferrets agreed to perform certain duties in the way of pointing out property for taxation."

What boots it that there the contractors were bluntly called "tax-ferrets", while here they were more euphoniously termed "skilled experts"—the respective services to be rendered, as affects the phase of them now under review, being non-distinguishable if not in fact identical?

Indeed, while neither was expressly a delinquent tax-collection engagement, the "tax-ferret" one there no more plainly contemplated the collection of such taxes than did the "skilled experts" one in this instance. If the mere reading of this contract does not disclose that these parties likewise expected to locate personal property, which had not theretofore been assessed, so that such property could be placed on the current roll for the ensuing year, it would be difficult to determine therefrom what their expectation was.

■ (3) If, however, there be any doubt as to the applicability of Art. 7335a, which was passed in 1930, the companion act, art. 7264a, passed in 1931, apparently clears it up, the two being construable together, along with other laws relating to the assessment and collection of taxes; while, as the Eastland court remarked in Sylvan Sanders Co. v. Scurry County, Tex.Civ. App., 77 S.W.2d 709, at page 711, the legislative intent as to this enactment in its entirety is not clear, and while, as the Supreme Court held in Easterwood v. Henderson County, 62 S.W.2d 65, at page 66, it neither dispenses with the approval of the Comptroller and the Attorney General, as required by art. 7335a nor was intended to change any pre-existing law regarding "the collection" of delinquent taxes, still its terms make plain that it did not deal alone with the mere *collection* of delinquent taxes, but that its purpose was to declare the public policy of the State to thereafter go further and "to *adjust* delinquent taxes, correct errors, to eliminate conflicts in surveys of land, and to collect the delinquent, occupation, franchise and Ad Valorem Taxes, in order to clear this State of such taxes, errors and conflicts at the earliest date possible, and to provide a system for assessors, in order to eliminate the numerous errors that now appear on the tax rolls each recurring year." Article 7264a, § 1.

By its section 3 it expressly requires contracts for the work so dealt with by the act to be made jointly by the State Comptroller and the Commissioners' Court of the particular county involved.

■ (4) When the undertakings of this contract quoted supra, that is, obligating these contractors to:

(a) *Diligently* search for, survey, identify the owner of, and make an appraisal of *all personal property* in the County of the type now generally assessed for taxation, showing the value of such property, *as of January 1, 1938;* and,

(b) Complete a land and building-valuation survey for the entire county, and file a complete report of such land and buildings, and their values, for the use of the Board of Equalization and the Assessor and Collector of taxes,

are applied to this statute, it becomes inescapable that the participation of the Comptroller therein was an indispensable requirement for its validity.

■ (5) While the Commissioners' Court may validly employ "skilled experts" to value for taxation purposes property in special instances, where technical equipment is required, since this contract—by its express terms—embraces a valuation of the entire taxable property of Harris County, as reflected by its tax records, it necessarily supersedes the powers, duties, and functions of the tax assessor and collector, and since those duties are devolved by law upon him, such an attempted employment by that body of other persons to, in the first instance, perform such duties instead, is an expenditure of public funds for an unauthorized purpose. Article 5, sec. 18, State Constitution; Sec. 18 and Sec. 14, as amended November 8, 1932, of Art. 8, State Constitution; Sections 6 and 10 of Art. 16, State Constitution; Section 3 of Art. 1, State Constitution; Art. 3, Secs. 44, 53, and 55 of State Constitution; Articles 7148, 7161, 7162, 7183, 7184 to 7205, inclusive, all of the Revised Civil Statutes of 1925; Missouri, K. & T. Ry. Co. v. Shannon, 100 Tex. 379, 100 S.W.

138, 10 L.R.A.,N.S., 681; Maud v. Terrell, 109 Tex. 97, 200 S.W. 375; Von Rosenberg v. Lovett, Tex.Civ.App., 173 S.W. 508; Roper v. Hall, Tex.Civ.App., 280 S.W. 289; Federal Royalty Co. v. State, Tex. Civ.App., 42 S.W.2d 670; Id., 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741.

 No extended discussion will be indulged in under this last-stated ground. Suffice it to say that such an apparent undertaking of a commissioners' court to itself initially revalue the entire taxable property of a county, under the guise of using the same for its own information and guidance when sitting as a Board of Equalization, does not seem to this court to square with the balanced system of relative powers and duties conferred upon that body by our laws, as comparable to the correlative ones conferred upon the county tax assessor-collector; it may be, as much testimony in the statement of facts indicates, that in this instance the commissioners' court concluded that the tax assessor-collector's office had broken down, and that its so occupying his place and performing his functions instead, justified an original assumption of such power upon its part; but it is not this court's understanding that our statutes in such cases conferred upon it any such authority; on the contrary, it would seem to have been the tax assessor-collector's legal right to independently perform the duties actually conferred upon him by law. Terrell v. Greene, 88 Tex. 539, 31 S.W. 631, 634; 34 Tex.Jur. p. 444.

The authorities cited under ground (5) supra seem to make it quite clear that this contract did evidence an undertaking to in effect usurp the official privileges and obligations of the tax assessor-collector, as vouchsafed in the statutes there collated, while upon the other hand, the differing and correlative duties of the commissioners' court—as a Board of Equalization—are embraced within R.S. Articles 7206, 7211, and 7212. Under them it would seem never to have been contemplated that the Board of Equalization should act upon anything other than the assessments first rendered to them by the tax assessor-collector, and not initially upon their own motion. County of Galveston v. Galveston Gas Co., 72 Tex. 509, 10 S.W. 583. Further, under R.S. Article 7217—after the assessor-collector had discharged his duties under those preceding statutes and had furnished the lists therein called for to that Board—it is obligated to return the same to him for presentment to the Grand Jury of his county.

 Further discussion is not deemed necessary, since this appeal is only from an interlocutory order, in advance of the trial of the cause below on its merits; this opinion is not to be understood as holding that there are not a number of valid policies properly dealt with in the contract in suit, but simply that, since the provisions held void therein are inseparably connected with others which may be entirely valid, the entire contract must fall. Sylvan Sanders Co. v. Scurry County, Tex.Civ. App., 77 S.W.2d 709, at page 710, and authorities there cited.

If these conclusions be sound, it follows that the judgment should be reversed and the temporary-injunction should be granted substantially as prayed for by the appellants in the trial court; it will be so ordered.

Judgment reversed, temporary injunction granted.

PLEASANTS, C. J., absent.