OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

October 10, 2000

The Honorable Gary L. Walker
Chair, Land & Resource
   Management Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0290

Re: Legality of a business that locates property omitted from the appraisal rolls for a percentage of the amount of tax generated for a local taxing unit (RQ-0218-JC)

Dear Representative Walker:

A constituent has contacted you "concerning the legality of a business he is interested in starting. The business would involve locating omitted property for a fee that would be based on the tax generated to the local taxing units. These units might include city, county, and school taxing entities."[1] You inquire whether such a business, which we assume would be organized solely for the purpose you describe, is legal. *See* Request Letter, note 1, at 1. Because you describe the business as one that would receive a contingent fee "based on the tax generated to the local taxing units," we consider only a business that is compensated on a contingent fee basis.

Although the business you propose is not illegal, no taxing unit, including a home-rule municipality, may contract with a private entity to locate property omitted from the appraisal rolls on a contingent fee basis. No statute expressly authorizes a taxing unit to enter a contingent fee contract in these circumstances, as we believe is necessary for a taxing unit to execute a contingent fee contract of this type.

We begin by responding to your question "regarding the legality of a business that" locates property that has been omitted from the tax rolls. *Id.* A for-profit corporation may be organized for any legal purpose. *See* TEX. BUS. CORP. ACT ANN. art. 2.01(A) (Vernon Supp. 2000). Nothing deems the purpose your constituent proposes illegal.

But no taxing unit may contract with a private corporation to locate property that has been omitted from the tax rolls if the corporation will be compensated on a contingent fee basis. A taxing unit includes a county, a municipality, a school district, a special district or authority, and any other

---

[1]Letter from Honorable Gary L. Walker, Chair, Land & Resource Management Committee, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Mar. 23, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

political unit of the state. *See* TEX. TAX CODE ANN. § 1.04(12) (Vernon Supp. 2000) (defining "taxing unit").

We begin by placing the type of contract about which you ask in the property-taxation context. A taxing unit generally may not employ a person to appraise property for taxation purposes. *See id.* § 1.15. Rather, the appraisal district of which a taxing unit is a part appraises property throughout a taxing unit. *See id.* § 6.01(b) (Vernon 1992). Using renditions received from property owners in the appraisal district, the district's chief appraiser annually prepares "appraisal records listing all property that is taxable in the district and stating the appraised value of each." *Id.* §§ 22.27(a), (b), 25.01(a) (Vernon 1992 & Supp. 2000); *see id.* §§ 6.01(a), .02(a) (Vernon 1992 & Supp. 2000) (establishing appraisal districts and articulating boundaries). The chief appraiser must add to the appraisal records any real or personal property that he or she discovers has been omitted in previous years:

> If the chief appraiser discovers that real property was omitted from an appraisal roll in any one of the five preceding years or that personal property was omitted from an appraisal roll in one of the two preceding years, he shall appraise the property as of January 1 of each year that it was omitted and enter the property and its appraised value in the appraisal records.

*Id.* § 25.21(a) (Vernon 1992).

The type of contract you describe, wherein a private entity contracts with a taxing unit to locate property omitted from the tax rolls, is known as a tax ferret contract. *See White v. McGill,* 114 S.W.2d 860, 861 (Tex. 1938); *see also Marquart v. Harris County,* 117 S.W.2d 494, 502 (Tex. Civ. App.–Galveston 1938, writ dism'd); V OXFORD ENGLISH DICTIONARY 844 (2d ed. 1989) (defining "to ferret out" as "[t]o search out, discover, bring to light"); *cf. Whitney v. City of Terrell,* 278 S.W.2d 909, 911 (Tex. Civ. App.–Waco 1955, no writ) (evaluating contract that does not provide for collecting delinquent taxes, and that is not, therefore, tax ferret contract); *Crosby v. Marquess & Co.,* 226 S.W.2d 461, 463-64 (Tex. Civ. App.–Beaumont 1950, writ ref'd n.r.e.) (describing contract that is not tax ferret contract).

In our opinion, any taxing unit's powers relating to property taxation are coextensive with title 1 of the Tax Code. A taxing unit other than a home-rule municipality has, by its very nature, only those powers that the constitution or statutes expressly confer or those necessarily implied from the express powers. *See Texas Roofing Co. v. Whiteside,* 385 S.W.2d 699, 701 (Tex. Civ. App.–Amarillo 1965, writ ref'd n.r.e.); *see also Canales v. Laughlin,* 214 S.W.2d 451, 453 (Tex. 1948) (discussing county powers); *Tri-City Fresh Water Supply Dist. v. Mann,* 142 S.W.2d 945, 946 (Tex. 1940) (discussing powers of special-purpose district); *Jackson County Hosp. Dist. v. Jackson County Citizens for Continued Hosp. Care,* 669 S.W.2d 147, 154 (Tex. App.–Corpus Christi 1984, no writ) (discussing hospital district's powers); *Harlingen Indep. Sch. Dist. v. C.H. Page & Bros.,* 48 S.W.2d 983, 986 (Tex. Comm'n App. 1932, holding approved) (discussing school district's

powers). All taxing units, including home-rule municipalities, are subject to section 1.02 of the Tax Code, which strictly circumscribes a taxing unit's authority to adopt a law that differs from the Tax Code:

> This title applies to a taxing unit that is created by or pursuant to any general, special, or local law enacted before or after the enactment of this title unless a law enacted after enactment of this title by or pursuant to which the taxing unit is created expressly provides that this title does not apply. This title supersedes any provision of a municipal charter or ordinance relating to property taxation. . . .

TEX. TAX CODE ANN. § 1.02 (Vernon 1992). Thus, title 1 of the Tax Code supersedes even a home-rule municipality's enactments relating to property taxation.

Judicial opinions issued before the 1979 adoption of the Tax Code determined that a contingent fee, tax ferret contract relates to "the collection of delinquent taxes" and that a taxing unit might enter one in strict compliance with applicable law. *See White*, 114 S.W.2d at 863; *Marquart*, 117 S.W.2d at 501. Because the law has been substantially amended since the tax ferret cases were decided, the cases do not dispose of the issue you raise. *See Grand Prairie Hosp. Dist. v. Dallas County Appraisal Dist.*, 730 S.W.2d 849, 851 (Tex. App.–Dallas 1987, writ ref'd n.r.e.) (stating that adoption of Tax Code repeals all inconsistent general, local, and special laws).

We believe the legislature intends to closely regulate contingent fee contracts involving taxing units. According to the 1938 *White* decision, the legislature has reasons to restrict a taxing unit's use of a contract under which a tax ferret is paid on a contingent fee basis. *See White*, 114 S.W.2d at 862-63. Prior to 1930, a commissioners court legally could enter a contingent fee, tax ferret contract. *See id.* at 862. But the contracts many counties entered "shocked the public conscience as being unfair and exorbitant." *Id.* Immediately after some courts upheld these contracts, "the Legislature took steps to declare the public policy of this State with respect to" this kind of contract. *Id.* "[T]o avoid the execution of contracts calling for excessive and unreasonable compensation," the legislature adopted statutes limiting the compensation to no more than fifteen percent of the amount collected and establishing an approval process for the contracts. *Id.*

> The Legislature found that the laws . . . on the statute books [before 1930] permitted contracts to be made . . . that were unfair and unjust to the public. It was desired that such evils should be stopped. Hence the Legislature enacted these articles for that purpose, and limited the compensation to be paid in an amount not to exceed 15[%] of the sum collected. It also further provided that such contracts must be approved by both the Comptroller and the Attorney General, and, unless such contracts were executed in compliance with the provisions of the act, same should be void.

*Id.* at 863.

In those rare circumstances where such a contingent fee contract is permitted, it is expressly allowed by a statute that circumscribes the amount of compensation a private entity may receive. Section 6.30 of the Tax Code, for example, strictly regulates the percentage by which a taxing unit may compensate an attorney who contracts with the taxing unit to enforce the collection of delinquent taxes. TEX. TAX CODE ANN. § 6.30 (Vernon 1992). Subsection (c) permits any taxing unit to contract with a competent attorney to enforce the collection of delinquent taxes. *See id.* § 6.30(c). But the subsection restricts the amount of compensation the attorney may receive: "The attorney's compensation is set in the contract, but the total amount of compensation provided may not exceed 20[%] of the amount of delinquent tax, penalty, and interest collected." *Id.* Any "contract with an attorney that does not conform to" the contingent fee limitations is void. *Id.* § 6.30(e).

By contrast, section 25.01 of the Tax Code expressly forbids a chief appraiser to enter a contract for private appraisal services under which the private appraisal firm is compensated on a contingent fee basis:

> The chief appraiser with the approval of the board of directors of the district may contract with a private appraisal firm to perform appraisal services for the district, subject to his approval. A contract for private appraisal services is void if the amount of compensation to be paid the private appraisal firm is contingent on the amount of or increase in appraised, assessed, or taxable value of property appraised by the appraisal firm.

TEX. TAX CODE ANN. § 25.01(b) (Vernon 1992).

The legislature has spoken further on the issue of contingent fee contracts involving governmental entities as recently as 1999. In 1999 the legislature adopted chapter 2254, subchapter C of the Government Code, which restricts the authority of a state governmental entity, the attorney general, or the state to enter a contingent fee contract for legal services:

> (a) A state governmental entity that has authority to enter into a contract for legal services in its own name may enter into a contingent fee contract for legal services only if [two requirements]:
>
> (b) The attorney general may enter into a contingent fee contract for legal services in the name of the state . . . only if the [referring] state governmental entity approves and signs the contract in accordance with Subsection (a).

> (c) A state governmental entity, including the state, may enter into a contingent fee contract for legal services that is not described by Subsection (a) or (b) only if the governor approves and signs the contract.

TEX. GOV'T CODE ANN. § 2254.103(a)-(c) (Vernon 2000).

No similar statute authorizes a taxing unit to enter a contingent fee, tax ferret contract. Certainly, nothing expressly grants the authority. Moreover, we find nothing that necessarily implies the authority.

Section 6.24 of the Tax Code comes the closest, but, ultimately, it does not authorize a contingent fee, tax ferret contract between a taxing unit and a private corporation. That section authorizes a taxing unit to enter a contract with another taxing unit under the Interlocal Cooperation Act, chapter 791 of the Government Code, "to perform duties relating to the assessment or collection of taxes." TEX. TAX CODE ANN. § 6.24(a), (b) (Vernon 1992). By referring to all contracts "relating to the . . . collection of taxes," section 6.24 mirrors the statutory language examined in *White* and *Marquart*, under which the court found that a taxing unit had strictly circumscribed powers to enter a contingent fee, tax ferret contract. *See White*, 114 S.W.2d at 863; *Marquart*, 117 S.W.2d at 501; *see also Whitney*, 278 S.W.2d at 911. But the language of section 6.24 is insufficient to authorize a contingent fee contract. First, section 6.24 contains none of the safeguards that were built into the statute considered in *White* and *Marquart*. For example, at the time of *White* and *Marquart* the statute limited the compensation a ferret could receive to no more than fifteen per cent of the amount of delinquent taxes collected. *See White*, 114 S.W.2d at 862 (quoting TEX. REV. CIV. STAT. ANN. art. 7335a and citing *id.* art. 7264a). In addition, a contingent fee contract at the time of *White* and *Marquart* had to be approved by the state comptroller and the attorney general. *See id.* (quoting TEX. REV. CIV. STAT. ANN. art. 7335a). Second, section 6.24 does not specifically authorize a taxing unit to enter a contingent fee contract.

We conclude that, without express authority, no taxing unit, including a home-rule municipality, may enter a contingent fee, tax ferret contract. *See* TEX. TAX CODE ANN. § 1.02 (Vernon 1992) (prohibiting taxing unit from adopting law that varies from Tax Code). In light of the legislative policy against a taxing unit entering a contingent fee contract, authority to do so should not be implied. Because there is no such express authority, a taxing unit may not enter a contingent fee, tax ferret contract.

## S U M M A R Y

A corporation that locates property that has been omitted from the appraisal rolls in return for a percentage of the increase in tax revenues may be organized, but no taxing unit may enter a contingent fee, tax ferret contract with the corporation.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee