## MILLS–DEWITT CO. v. BRAZORIA COUNTY.

### No. 10977.

Court of Civil Appeals of Texas. Galveston.
April 25, 1940.

Rehearing Denied Aug. 1, 1940.

George M. Feild, of Dallas, for appellant.
Robert M. Lyles, A. R. Rucks, and Carlos B. Masterson, all of Angleton, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the district court of Brazoria County sitting without a jury, sustaining a general demurrer (together with several special exceptions) to the appellant's trial petition and dismissing its suit, wherein it sought to recover a $33\frac{1}{3}$ per cent interest in delinquent tax collections of approximately $220,000, alleged to .have been realized by the appellee under the terms of a written contract between the parties, dated June 17 of 1929; a substantial copy of such petition (along with the contract appellant declared upon and made a part of the pleading) is appended hereto as an exhibit.

Since the periods of time prescribed in the contract for the performance of the different classes of undertakings of the appellant had, as per its affirmative declarations, all expired more than four years before this suit thereon was filed on the 22nd day of February of. 1939, hence that the action was barred by R.S. Article 5527, the correctness of the judgment so dismissing the cause depends upon whether or not the petition states a good cause of action, as upon either a waiver of the times of performance of appellant's obligation so expressed, or a valid renewal by the parties of the contract embodying them, after the expirations of such original dates.

In other words, since it so expressly appears from the pleadings that none of ·appellant's undertakings were completed ·within the dates provided therefor· in the ·face of the contract, and that the parties, so recognizing, undertook by agreements in November of 1930, as well as in June and · December, respectively, of 1931, to extend · the times of such performance, so as to constitute ·a continuing or renewed agreement that would be valid notwithstanding the provisions of Vernon's Ann.Civ.St. Article 7335a, which was passed in 1930, and Article 7264a, which was passed in 1931.

This court concludes that the learned trial court was correct:

(1) In that it affirmatively appears from the face of the petition that the prerequisites to the formation or reinstatement of a valid contract, whether considered as in waiver or renewal of the provisions of the original one, were wanting; that is, it expressly appears upon the face thereof that this was, plainly, a contract "in connection with the collection of delinquent taxes", within the terms of Articles 7335a and 7264a, supra, hence the efforts in November of 1930 and June and December of 1931 to resuscitate them—after they had so become functus officio by their own terms—were in direct contravention of the terms of those statutes, hence were abortive;

(2) In that, by its original terms, the appellant was to receive for its services 33⅓ per cent of all delinquent taxes collected for the period from 1885 to February 1 of 1929;

(3) In that, the time of performance was of the essence of the original contract, as per expressed specifications thereof in its paragraph X—that is, that appellant was strictly obligated not only to complete its work on or before 18 months after June 17 of 1929, but that likewise all suits had to be prosecuted to final judgment within three years after the expiration of such 18 months, and that in haec verba, *"all interests of second party in any suits, or collections, not concluded within such period of three years from said 18 months shall be forfeited and this contract shall be absolutely terminated on and from said date";*

(4) In that, the express terms of cited Article 7335a render such efforts to waive the time of performance or renew the obligation after its expiration, void, on two counts: (a) The compensation was more than twice the 15% therein specified as a maximum charge, and (b) neither the Comptroller nor the Attorney General of the State had approved any of them;

(5) Neither did subsequent R.S. Article 7264a retrieve this black-out for appellant in any respect, because, by its express terms, it was "not intended to change any law now in effect regarding the collection of delinquent taxes"; these two statutes were reviewed by this court in Marquart v. Harris County, 117 S.W.2d 494, at page 502, column 1, paragraph (2), in an analogous situation in this respect and given the effect here applied to them.

(6) There was no implied basis in the original contract for any subsequent waiver of the time for performance or renewal thereof after expiration of the specified time, because of the clear implication—as indicated supra—that the parties had no such contingencies in mind, rather that they were contracting upon and fixing the time of duration, from their understanding, as being of its essence;

Furthermore, there seems no doubt that each of these so-called "waivers" of time, or renewals of the agreement, were attended by appellant's new agreement to do additional work by bringing the maps, plats, and abstracts and indexes down to the new dates indicated as considerations therefor; this could, in effect, amount to nothing other than an attempt to renew such contracts after they had expired by a pre-existing law and after R.S. Articles 7335a and 7264a had expressly prohibited them. Wherefore, appellant's finespun distinction that it "claims no renewal agreement, merely waiver of dates fixed for completion", would seem to this court to be inept.

So that, it is thought, a close scrutiny of the petition will disclose, aside from mere conclusions of law, no averment of any waivers of or extensions of time, or of renewals of the obligations of the contract, except those that had their origin after the effective date of R.S. Article 7335a—that is, after February 17 of 1930. The additional work appellant was to do under the "waivers", as it termed them, or the attempted renewals, as appellee termed them, of the original contract, are set out in paragraph IV thereof, so that no 33⅓ per cent of compensation therefor could have been lawful.

As concerns the collection of the Hogg taxes in particular, while the conclusions already stated cover this feature along with the others, it may not be amiss to add that at the time of their collection, by the unequivocal averments of the petition, the original contract had, under its own terms, long since expired, hence appellant was then operating under one of these new extensions or a new contract, which, like all the others, had to be in compliance with R.S. Article 7335a to become valid; especially was this true as to that claim, since by sub-paragraph (c) of paragraph X of the original contract—as herein before quoted—it had been specifically pro-

vided that "all interest of the Second Party in any suits, or collections, not concluded within such period of three years from said eighteen months, shall be forfeited, and this contract shall be absolutely terminated on and from said date."

At that late date, according to the holding of the trial court, the interest of appellant in that collection for a 33⅓ per cent division thereof had ceased and could not be brought back to life without a compliance with the positive law then in effect.

Under the view that the original contract had expired, that the new efforts to waive the time of performance—or to renew the undertakings therein—all had their inception after the effective date of Article 7335a, and that this cause comes plainly within such cases as White v. McGill, 131 Tex. 231, 114 S.W.2d 860, and Marquart v. Harris County, Tex.Civ.App., 117 S.W.2d 494, an affirmance will be ordered.

Affirmed.

### Exhibit

"Mills-Dewitt Company v. Brazoria County, Texas. No. 27797.

"In the District Court of Brazoria, for the 23rd Judicial District of Texas.

"To the Honorable Judge of Said Court:

"Now comes Mills-DeWitt Company, a Corporation, duly organized and incorporated under the laws of the State of Texas, and having its domicile and principal place of business in Bexar County, Texas, hereinafter called Plaintiff, leave of the Court having been first had and obtained and files this its First Amended Original Petition, in lieu of its Original Petition filed herein on the 22nd day of February, 1939, and complaining of Brazoria County, Texas, a body corporate and politic, having as its County Judge O. K. Phillips, upon whom service of process herein has already been had; and for cause of action states:

"1. Plaintiff states that under date of June 17, 1929, Mills-DeWitt Company entered into a written contract with defendant, Brazoria County, Texas, copy of which contract is hereto attached as an exhibit, marked Exhibit 'A' and made a part of this First Amended Petition, the same as if written herein in full. Plaintiff states that said contract is spread upon the minutes of the Commissioners' Court of Brazoria County, Texas, in Vol. P, page 268, et seq., of said minutes, and defendant is notified to produce the same upon the trial of this cause to be read in evidence on behalf of plaintiff, and unless 'same is produced secondary evidence of the same will be introduced. Defendant is further notified to produce upon the trial hereof the surety bond executed by plaintiff with Detroit Fidelity & Surety Company as surety to guarantee the performance of said contract, together with the order of the Commissioners' Court of date July 8, 1929, approving said bond and directing plaintiff to proceed with the performance of said contract, recorded in Vol. P, page 276, minutes of the Commissioners' Court of Brazoria County, to be used as evidence on behalf of plaintiff, and unless the same is produced secondary evidence of the same will be introduced. Plaintiff states that under the terms of said contract defendant employed plaintiff to make and install complete Plat Book System for Brazoria County, Texas, to build a wall map of Brazoria County, Texas, and make copies of the same for the use of the County Judge, the County Tax Collector, the County Superintendent of Public Instruction, the County Tax Assessor, and the County Clerk, to furnish a wall map of each City, town or village in said county, of which there should be an original and three copies, to make a block map of each and every headright survey in said county, drawn to such scale as would properly show the subject matter, with one or more surveys on each page, to show the name of the survey mapped, and names of the surveys surrounding and touching the same, the abstract number of said survey, number of acres in said survey, the number of acres subject to taxation, the number of acres transferred to some other taxing district for taxation purposes, the number of acres of non-taxable lands in the survey mapped, show the individual tracts in each number and the number of acres in each tract and numbered from 1 up consecutively for identification, with the names of the owners on the title sheet, show the public roads, churches, schools, parks and other public ownerships, as well as railroads, with the number of acres taken up by each; to make a block map of each city, town or village with not more than twenty blocks of residence property or not more than ten blocks of business property shown on each block map page, drawn to scale with the required distance and direction of each lot or tract shown, show the name of the town, addition, block number and lot number, show the streets, alleys, churches, schools, parks

and other public ownerships; make a complete abstract of property assessed or unknown and unrendered upon which taxes are delinquent for the purposes of taxation; prepare a complete consolidated tax roll; prepare a consolidated delinquent tax notice, showing all taxes due or shown to be due on consolidated tax rolls; together with other services, as are more fully shown in the copy of such contract attached hereto and marked Exhibit 'A' and made a part hereof, to which reference is here made for full description of the services above enumerated.

"2. Plaintiff stated that said contract provides in paragraph XI thereof that for and in consideration of the skilled services and technical knowledge required to be employed by said Mills-DeWitt Company in the preparation of said Plat Book System, and abstracts and of the obligations devolving upon it under said contract, said Mills-DeWitt Company should receive and be paid by Brazoria County, Texas, thirty-three and one-third per cent (33⅓%) of all delinquent taxes, penalties and interest of every character whatsoever, including State, County, School, Road, and other Districts, as fully shown in said contract, copy of which is marked Exhibit 'A' and made a part hereof.

"3. Plaintiff states that it commenced performance of the work required by the terms of said contract, and that soon thereafter the State of Texas refused to recognize said contract and declined to permit the payment to plaintiff of the 33⅓ per cent of the State's portion of said delinquent taxes, and claimed that said contract was invalid. The County Attorney of Brazoria County recommended that the Commissioners' Court of Brazoria County stop the work under the contract until the legality was finally determined by the court. It thereupon became necessary for plaintiff to have a mandamus suit brought in the Supreme Court of Texas to establish the validity of said contract and require the State of Texas to permit payment to plaintiff by defendant of the 33⅓ per cent of the State's portion of the delinquent taxes collected, which said mandamus suit was not finally determined until on or about the 10th day of June, 1931; which said facts materially hindered and delayed plaintiff in the prosecution of said work.

"4. Plaintiff states that said contract provided in Paragraph XIII that said work should be completed on or before eighteen months after the date of the same except as provided in Section 3 of Paragraph X of said contract. That the date of the expiration of said eighteen months period was December 17, 1930. The third section of said Paragraph X of said contract provided that all suits pending on the docket of the District Court of Brazoria County, Texas, at the termination of the eighteen months period of said contract should be prosecuted to a final judgment in the District Court of Brazoria County, Texas, within a period of three (3) years after the eighteen months period of the contract, and all interest of the plaintiff in any suits or collections not concluded within such period of three years from said eighteen months should be forfeited and the contract terminated on and from said date. Plaintiff states that in the month of November, 1930, Plaintiff and Defendant entered into an agreement to extend the time for the completion of said contract to the 15th of June, 1931. That by the terms of such agreement Plaintiff was to keep the map, plat and abstract work indexed down to June 15, 1931. That thereafter the Commissioners' Court of Brazoria County entered an order as of the 10th day of November, 1930, evidencing such agreement, which said order is recorded in Vol. P, page 564, Minutes of the Commissioners' Court of Brazoria County, and said defendant is here notified to produce the same to be read in evidence upon the trial of this cause on behalf of plaintiff, otherwise secondary evidence of the same will be introduced. Plaintiff states that in the month of June, and prior to the 15th day thereof, plaintiff and defendant entered into an agreement for an extension of time in the performance of said contract until December 15, 1931, which agreement provided Mills-DeWitt Company bring down to date of December 15, 1931, the plat of block books. That under date of November 9, 1931, the Commissioners' Court of Brazoria County entered an order extending the time for the completion of said contract to December 15, 1931, as of and from the date of June 8, 1931, and providing that said contract and the performance bond should be and the same remain in full force and effect, which said order is a part of the records of and in possession of the defendant, and recorded in Vol. Q, page 121, Minutes of the Commissioners' Court of Brazoria County, and said defendant

is here notified to produce the same, to be read in evidence upon the trial of this cause on behalf of plaintiff, otherwise secondary evidence of the same will be introduced. Plaintiff states that in the month of December, 1931, plaintiff and defendant entered into an agreement to further extend the time for the completion of said contract, without naming a definite time for the final completion of the same, in consideration of plaintiff bringing the plat books down to date of the final completion of the contract, which said agreement provided that said extension of time should apply to the provisions of the third section of Paragraph X of said contract, so that the three year period provided for the prosecution to final judgment in the District Court of Brazoria County of suits for the collection of delinquent taxes, penalties and interest, and for the conclusion of collections of said delinquent taxes, penalties and interest, should run from the final completion and acceptance of the work under said contract. Plaintiff states that by agreement between plaintiff and defendant no order was made upon the record of the Commissioners' Court evidencing such agreement. Plaintiff further states that after such agreement was made and entered into both plaintiff and defendant continued to treat said contract as in full force and effect and to recognize the validity and binding force of the same, and as of the 30th day of December, 1931, the Commissioners' Court entered of record upon its minutes, in Vol. Q, page 134, a request to plaintiff to retain George Livingston to complete the map work being done for the County under said contract, which said notation of request is a part of the records of and in possession of defendant, and notice is hereby given to produce the same upon the trial hereof, to be used in evidence by plaintiff, and unless the same is produced secondary evidence of the same will be introduced. Plaintiff states that thereafter both plaintiff and defendant continued to carry out the terms of said contract and recognized the validity and binding force of the same, and as of the 8th day of July, 1932, the Commissioners' Court of Brazoria County recognized its said agreement to extend the time for the performance of said contract by entering upon its minutes in Book Q, page 202, a request to plaintiff to complete the performance of the work required of it under said contract, which said request is a part of the records of and in possession of de-

fendant, and defendant is hereby notified to produce the same upon the trial of this cause, to be used in evidence on behalf of plaintiff, and unless the same is produced secondary evidence of the same will be introduced. Both parties continued to treat said contract as extended in full force, and plaintiff states that both plaintiff and defendant continued to carry out the terms of said contract and recognized the validity of said contract and the continuance of the same in full force and effect, and as of the 27th day of February, 1933, the Commissioners' Court entered an order in Vol. Q, page 247, of the minutes of the Commissioners' Court of Brazoria County, which said order accepted the work performed by plaintiff under said contract as in full compliance with the terms and specifications thereof, and declared said contract fully complied with according to plans and specifications, and discharged and released the Detroit Fidelity & Surety Company, and declared null and void the obligations contained in the bond executed by said Company as surety for the performance of said contract, and ordered the payment to plaintiff of the retained percentage under said contract, which said order is a part of the records of and in possession of defendant, and defendant is hereby notified to produce the same upon trial of said cause, to be used in evidence on behalf of the plaintiff, and unless the same is produced secondary evidence of the contents thereof will be introduced. Plaintiff states that by such orders hereinabove set forth, and by the agreements hereinabove set forth, defendant recognized the validity and binding force and effect of said contract and extended, substituted and waived the time originally provided therein for the performance thereof, so that the date for the performance of said contract was amended, substituted, changed and waived so as to read February 27, 1933, as the date for the completion of said contract, and February 27, 1933, as the date for the commencement of the three year period set forth in the third section of Paragraph X of said contract providing for the prosecution to final judgment in the District Court of Brazoria County of all suits for the collection of delinquent taxes within a period of three years, and the conclusion of collections of delinquent taxes within such period of three years. Plaintiff states that it fully completed all the work described in said contract and defendant accepted said work as fully com-

pleted and in full compliance with all the terms of said contract. Plaintiff did and completed every item of work required of it under said contract.

"5. Plaintiff states that during the progress of its work under said contract it prepared for filing and presented to the county attorney for signature, in compliance with the provisions of said contract requiring it to assist the officers of Brazoria County, cause No. 23959, styled The State of Texas v. W. C. Hogg et al., on the docket of the 23rd District Court of Brazoria County, for the collection of delinquent taxes for the years 1928 and 1929, which suit was filed on or about the 2nd day of June, 1930. Plaintiff states that at the time of said cause No. 23959 there was upon the docket of said court cause No. 22151, styled W. C. Hogg et al. v. George W. Sheffield, Tax Collector, which said cause was on appeal. That the County Attorney of Brazoria County entered into an agreement with attorneys for plaintiffs in cause No. 22151 that cause No. 23959 should be passed to await final disposition of the appeal in said cause No. 22151, and that said cause No. 23959, together with any other taxes that might have become delinquent, should abide the disposition of the appeal in said cause, No. 22151, which said agreement operated as a waiver of the time fixed in the contract between plaintiff and defendant for taking judgment in the District Court of Brazoria County, the concluding collections of delinquent taxes. Plaintiff further states that it repeatedly requested defendant to be permitted to prosecute cause No. 23959 to final judgment, but that defendant refused to permit said cause No. 23959 to be prosecuted to final judgment because of the agreement above mentioned that said cause should be continued to await final disposition of cause No. 22151. That said refusal to permit plaintiff to prosecute said cause No. 23959 to final judgment operated as a waiver of the time fixed in said contract between plaintiff and defendant fixing the three year limit in which suits for the collection of delinquent taxes should be prosecuted to final judgment in the District Court of Brazoria County, Texas. Plaintiff states that the appeal in said cause No. 22151 was finally decided in February or March of 1935 by the Supreme Court of Texas against the plaintiffs in said cause, and that pursuant to the agreement hereinabove mentioned with reference to cause No. 23959 judgment was entered on the 12th day of March, 1935, against the defendants in said cause No. 23959, and on or about the 15th day of March, 1935, Hogg Estate, defendants in said cause No. 23959, paid to defendant herein delinquent taxes for the year 1928, approximately the sum of $17,500.00, and on or about the said date paid to the defendant herein delinquent taxes for the year 1929, approximately the sum of $20,000.00. Plaintiff states that on or about said date defendants Hogg Estate paid to defendant herein delinquent taxes for the year 1927, in approximately the sum of $34,175, pursuant to the judgment rendered in said cause No. 22151. Plaintiff states that on or about said date the said Hogg Estate paid to defendant herein delinquent taxes for the years 1930, 1931, and 1932, in approximately the sum of $49,121.00. Plaintiff states that the exact amount of each of said collections of delinquent taxes is unknown to plaintiff but well known to defendant. Plaintiff states that under the terms of the contract between plaintiff and defendant defendant should have paid to plaintiff 33⅓ per cent. of said amounts so collected, but that, though plaintiff has made repeated requests for such payment, defendant has failed and refused to pay the same or any part thereof. Plaintiff further states that in addition to the sums hereinabove set forth paid by the Hogg Estate to defendant, various other sums of delinquent taxes have been paid to defendant in various amounts, unknown to plaintiff but well known to the defendant, which said further payments bring the total, including the payments made by the Hogg Estate, to approximately the sum of $220,224.89, the exact amount of which is unknown to the plaintiff but well known to defendant, and on all of which sums so collected said defendant should have paid to plaintiff 33⅓ per cent, but though often requested, said defendant has failed and refused to pay the same or any part thereof, to plaintiff's damage in the sum of $75,000.00.

"6. Plaintiff states that the records showing delinquent tax collections are in the possession of defendant, and plaintiff hereby demands that defendant produce at the trial hereof the original records showing the amount of delinquent taxes collected by defendant between the 27th day of February, 1933, and the 26th day of February, 1936, for the years 1885 to 1932, inclusive, and notice is hereby given

that unless such records are produced plaintiff will offer secondary evidence to establish the contents thereof.

"7. Plaintiff states that the contract between plaintiff and defendant hereinabove described and attached hereto and marked Exhibit 'A' and dated June 17, 1929, together with the bond to guarantee the performance of said contract, dated July 1, 1929, and executed by plaintiff as principal and Detroit Fidelity & Surety Company as surety, and the resolutions of the Commissioners' Court of Brazoria County with reference to said contract dated July 8, 1929, November 10, 1930, November 9, 1931, December 30, 1931, August 8, 1932, and February 27, 1933, are all a part of the records of defendant and are in possession of defendant, and defendant is hereby notified to produce said original contract and resolutions and the record of each of the same upon the trial of this cause, to be used in evidence on behalf of the plaintiff, and that unless said contract and resolutions and the record of each of the same are produced upon the trial hereof, secondary evidence to establish the contents of the same will be introduced.

"8. Plaintiff states that its cause of action herein was presented in the form of a claim to the Commissioners' Court of Brazoria County, Texas, in December, 1935, for allowance, and that said Court failed and refused to audit and allow the same or any part thereof and rejected said claim in whole by order as of the 13th day of January, 1938, entered in Vol. R, page 92, Minutes of the Commissioners' Court of Brazoria County, Texas, and defendant is notified to produce said original claim and said original order, and said record thereof, on the trial of this cause, to be used in evidence on behalf of plaintiff, and that unless said claim, said order and record thereof are produced, secondary evidence of the same will be introduced.

"9. Plaintiff states that it carried out said contract with defendant at a cost to plaintiff of more than $20,000.00 in excess of the compensation paid therefor by defendant to plaintiff, and that it is unconscionable and inequitable for defendant to withhold from plaintiff the 33⅓ per cent of the delinquent taxes, interest and penalties collected by defendant since the 27th day of February, 1933, and prior to February 26, 1936, for the years 1885 to 1932, inclusive.

"10. Wherefore, plaintiff prays that the defendant, having heretofore been cited and having heretofore answered herein, be directed to account for all delinquent taxes, penalties and interest collected by it between February 27, 1933, and February 26, 1936, for the years 1885 to 1932, inclusive, and that defendant be decreed to pay plaintiff such amount as shown upon said account to be due from defendant to plaintiff, and that plaintiff have judgment against defendant for said sum, interest and costs, and for all such other relief, at law, or in equity, to which it may be justly entitled.

"George M. Feild,
"Attorney for Plaintiff.
"322 Wilson Building,
"Dallas, Texas.
"State of Texas, County of Bexar.

"R. C. Booton, being first duly sworn, on his oath states that he is Vice President of Mills-DeWitt Company, plaintiff herein; that he has read the foregoing First Amended Original Petition and knows the contents thereof, and that the facts stated therein are true to the best of his knowledge and belief.

"R. C. Booton
"Sworn to and subscribed before me, this 5 day of July, 1939.
"Martha B. Jones,
"Notary Public, Bexar County.

"Exhibit 'A'

"The State of Texas, County of Brazoria.

"This agreement made this 17 day of June, A.D.1929, by and between Brazoria County, Texas, acting herein by and through its County Judge and Commissioners' Court, hereinafter styled First Party, and Mills-DeWitt Company, a corporation, organized and existing under and by virtue of the laws of the State of Texas, acting herein by and through its Vice-President, R. B. DeWitt, thereunto duly authorized, hereinafter styled Second Party, witnesseth:

"I. First Party agrees to employ and does hereby employ Second Party to make and install a complete plat book system for Brazoria County, Texas, showing each and every tract, lot or parcel of land in Brazoria County, Texas, with descriptions thereof, said plat book to have each and every tract, lot or parcel of land numbered according to abstract numbers now existing or other designations and to show the contents of each and every tract, lot or parcel of land, and the record owner of same, on

January 1st, next preceding completion of said contract.

"II. There shall be built a wall map of Brazoria County, Texas, which shall show each tract of land in said County (outside of villages and towns) with the name of the owner thereof printed on the same, the number of acres in each tract; the name and abstract number of each survey; it shall show the railroads, rivers, and other boundaries. The same shall be drawn to scale, and shall be built in a clean workmanlike manner. The scale of which the same is to be drawn shall be such as will plainly show the subject matter of said map. Said map shall show the Public Roads, Churches, Schools, Public Parks, Cemeteries, and other public ownerships.

"For the use of the County Judge, there shall be a copy of said map made, which shall have outlined in distinctive coloring the boundaries of the various Road Districts and Commissioners' Precincts.

"For the use of the County Tax Collector there shall be a copy of said map which shall have outlined in distinctive coloring the boundaries of the various voting precincts in said County.

"For the use of the County Superintendent of Public Instruction, there shall be a copy of said map which shall have outlined in distinctive coloring the boundaries of the various School Districts in said County.

"For the use of the County Tax Assessor there shall be furnished a copy of said map which shall have outlined in distinctive coloring the boundaries of the various school districts and the various sub-divisions on which individual taxes are levied.

"For the use of the County Clerk there shall be furnished a copy of said map which shall have outlined in distinctive coloring the boundaries of the Justices' Precincts and Commissioners' Precincts of said County.

"III. There shall be furnished a wall map of each City, Town or village in said county, which shall show the lot and block, name of addition, the streets, alleys, and city limits and showing the location of all churches, schools, parks and other public ownerships. The same shall be drawn to scale and shall be built in a clean workmanlike manner. The scale on which the same is to be drawn shall be such as will plainly show the subject matter of said map.

"There shall be the original and three copies of each map furnished.

"IV. A block map shall be made of each and every headright survey in said County. They shall be drawn to such a scale as will properly show the subject matter of such map, with one or more surveys shown on each page of said Map Book. Said map of each headright survey shall show the name of the survey mapped, the names of the surveys surrounding and touching the surveys mapped; the abstract number of said survey, the number of acres in said survey, the number of acres subject to taxation; the number of acres transferred to some other taxing district for taxation purposes (viz.) towns and additions to cities, and the number of acres of nontaxable lands in the survey mapped.; said map shall show the individual tracts in each number and the number of acres in each tract; the tract shall be numbered from one up consecutively for the purpose of identifying the said tracts with the names of the owners on the Title Sheet to said survey as hereinafter shown. Said Map shall give the record course and distance of each tract on said survey being mapped. It shall show what School District, Road District and other individual taxable districts in which said survey is situated and where a line divides a tract shall show the number of acres inside and outside of said districts. It shall show the Public Roads, Churches, Schools, parks and other public ownerships, as well as Railroads, with the number of acres taken up by each. On large surveys, where necessary to do so, two or more map sheets may be used for each survey. Each survey map shall be on the right hand side of the open book.

"With reference to all the foregoing maps herein mentioned it is agreed that Second Party may reserve its copyrights, for its own use and benefit as against all parties except First Party, which shall at all times have the right of duplication of any map herein mentioned, for the exclusive use of any county officers or employees in the conduct of County business only.

"V. A title sheet shall be prepared which bears the same page number as the Block Map of the survey of which it is the title sheet. It shall be on the left hand side of the open book, and shall show the name of the survey; the abstract number thereof, and such other information as is required by the Comptroller of Public Accounts for Assessors Abstract Books; it shall show the name of the record owner on January 1st, preceding the date of the completion

of each individual tract as shown by the Block Map for the survey, with the number of acres therein, and which said tracts shall be identified by bearing the same number as the same tract on the block map; it shall have space for the valuation of such individual tracts by the Board of Equalization.

"VI. There shall be a block map of each City, Town or Village, with not more than twenty blocks of residence property or not more than ten blocks of business property shown on each block map page; it shall be drawn to scale, with the record distance and direction of each lot or tract shown thereon; it shall show the name of the town, the name of the addition, if an addition, the block number and the number of the lot; in lots and blocks that have heretofore been plotted the original designation shall be used, and where a lot has been cut and is owned by one or more separate owners the additional designation by the use of the alphabet shall be used; it shall show the streets, alleys, churches, schools, parks and other public ownerships; it shall show by distinctive coloring which lots are exempt from taxation and for what reason.

"VII. A title sheet shall be prepared which shall bear the same page number as the block map of the block of which it is the title sheet. It shall be on the left hand side of the open book, and shall show the name of the survey, the abstract number thereof, and such other information as is required by the Comptroller of Public Accounts for Assessor's Abstract books; it shall show the name of the record owner on January 1st, preceding the date of the completion of each lot shown on the block map for the blocks and which lot shall be identified by bearing the same number as the lot on the block map; it shall have space for the valuation of such lot for the use of the Board of Equalization. It shall show the name of the town, addition, if any, and the number of block or blocks.

"VIII. Second Party agrees to perform the above mentioned services for the First Party, and to do same in a skillful manner, for and in consideration of the payments hereinafter mentioned; that it will employ all necessary skilled help on said work, and obligates itself to furnish all labor and material and supplies of whatsoever kind or character necessary and at its own expense, to make plat of Brazoria County, Texas, showing each and every tract, block, lot or parcel of land situated therein, showing

same properly numbered and showing the number of acres in each and every tract, lot or parcel of land, the record owner of the same on January 1st, preceding the completion of said plat book and descriptions thereof, all of said information to be completed as aforesaid, to be copied in a book for the Tax Assessor so that he can assess each tract by himself.

"IX. Should it become necessary in the performance and execution of the work herein required to be done, in the elimination of conflicting and over-lapping surveys, Second Party agrees to make or cause to be made a survey or surveys of any tract or tracts of land in said county; said survey or surveys to be made by competent engineers, to be furnished by Second Party, and deliver, or cause to be delivered, to the Commissioners' Court of said County the field notes and plat thereof to the end that the same may be submitted by said Court to the General Land Office of the State of Texas for approval; to make report to the Commissioners' Court with the necessary maps and plats, showing all lands discovered by Second Party to be excess land in surveys that have not heretofore been assessed for taxation and on which no taxes have been paid, in order that the proper officials of said County may be given appropriate directions to assess taxes against said unrendered lands and property.

"X. (a) First Party agrees to employ and does hereby employ Second Party to make a complete Abstract of property assessed or unknown and unrendered upon which taxes are delinquent for the purposes of taxation; that said Abstract shall cover all real property of every character from January 31, 1885, to and including February 1, 1929, and which shall include State, County, School, Road District and other District Taxes shown to be due and to be collected and said records shall be made to disclose all unrendered property and property the ownership of which is unknown which has heretofore escaped taxation. As a necessary part of said Abstracts, Second Party shall prepare a complete consolidated Tax Roll, or assist the Tax Collector in the preparation of same, covering the period of time to February 1, 1929, and furnish same to Brazoria County, and the same shall be prepared so as to secure the approval of the Comptroller of Public Accounts, Austin, Texas. Three copies of same shall be furnished.

"(b) On all charges on the Delinquent Tax Rolls that show to February 1, 1929, to be delinquent which have been caused through errors, double renditions, etc., a memorandum shall be prepared showing how such errors came about, and which shall be sufficiently full as to justify the Commissioners' Court in ordering a cancellation certificate issued, and that they will meet the approval of the Comptroller of Public Accounts, Austin, Texas.

"(c) Second Party shall prepare a consolidated delinquent tax notice (Acts of Legislature 1923) showing all taxes due or shown to be due on consolidated delinquent tax rolls, and which shall be mailed by the Tax Collector to the delinquent tax payer. In the event the taxes, together with penalty and interest, are not paid within thirty days from the date such statements are mailed, there shall be prepared as soon as is practicable thereafter a suit for the collection of said taxes, penalties and interest which shall be prosecuted to final judgment and sale, or until said taxes are collected; and it is contracted and agreed that any and all suits pending on the docket of the District Court of Brazoria County, Texas, at the termination of the eighteen months period hereof shall be prosecuted to a final judgment in the District Court of Brazoria County, Texas, within a period of three (3) years after the eighteen months period of this contract, and all interest of the Second Party in any suits, or collections not concluded within such period of three years from said eighteen months shall be forfeited and this contract shall be absolutely terminated on and from said date.

"XI. It is further agreed that for and in consideration of the skilled services and technical knowledge required to be employed by the said Mills-DeWitt Company in the preparation of said Plat Book System, and abstracts, as herein provided, and of the obligations devolving upon it hereunder, second party is to receive and shall receive and be paid by First Party thirty-three and one-third per cent (33-1/3%) of all delinquent taxes, penalties and interest of every character whatsoever including State, County, School, Road, and other districts, which amount or per cent shall be paid in the manner following:

"At the time the Tax Collector of Brazoria County makes and files his monthly report of taxes collected covering the previous month, and prior to making deposit, settlement or remittance of said delinquent tax moneys, he shall and is hereby instructed to deduct therefrom thirty-three and one-third per cent (33-1/3%) of all delinquent taxes aforesaid and deposit same in the special fund hereinafter created which fund shall be designated 'Abstract and Map Fund' and which fund shall be for the sole and personal use of the said Mills-DeWitt Company, and the said Tax Collector shall in his said monthly reports from and after the date of this contract, take credit for the amounts so deposited or paid into said fund.

"During the progress of said work there shall be issued to the said Mills-DeWitt Company by the County Officers authorized to sign same, to-wit: County Judge, County Clerk, County Treasurer and County Auditor, warrants against and payable out of said fund in installments of not to exceed one and one-half per cent (1½%) of the total amount of collectable delinquent taxes now outstanding and as shown in consolidated delinquent tax roll to be prepared by Second Party and further that the total amount of warrants issued under this contract shall not exceed forty thousand dollars ($40,000.00). Prior to the issuance and delivery to second party of the foregoing warrants second party shall file with the County Auditor and Commissioners' Court of Brazoria County, Texas, an itemized statement, showing the total expenses covering labor, material and supplies from time to time, as and when Second Party may request the issuance of warrants and which itemized statement shall at all times be filed before warrants for the amounts shown by said statement shall be issued.

"Said warrants shall be non-interest bearing, shall be dated the date of their delivery and shall be paid only as and when there is sufficient money in said fund to pay same. Said warrants shall be issued to the said Mills-DeWitt Company as follows: At the first regular term of the Commissioners' Court following the date hereof, and on the second Monday of each month thereafter, during the life of this contract, there shall be issued and delivered to them warrants in an amount not to exceed one and one-half per cent (1½%) of the total amount of the delinquent taxes, penalties and interest shown to be due on the consolidated delinquent tax rolls to be prepared by Second Party reflecting the correct amount of delinquent taxes, penalties and interest then due, until warrants in an amount equal to fifteen per cent (15%) of

the total amount of all delinquent taxes, penalties and interest of every character, shown on said consolidated delinquent tax rolls shall have been so delivered.

"When and after said warrants, in an amount not to exceed $40,000.00 as herein provided shall have been delivered and a sufficient amount of delinquent taxes, penalties and interest shall have been collected and paid into said fund to redeem said $40,000.00 then and thereafter twenty-three and one-third per cent (23⅓%) of any and all delinquent taxes, penalties and interest collected by the Tax Collector shall be by him paid to said Mills-DeWitt Company in cash, monthly as and when said collections are made. The ten per cent retained percentage is to be paid upon final completion and acceptance of job.

"XII. First Party is obligated hereunder to do and perform every official act and thing necessary and required of it by law or that which it is its contractual duty to do, in the collection of all delinquent taxes as provided herein and said obligation and duty and the performance thereof by First Party is of the essence of this contract, and is the consideration moving Second Party to the performance of its obligations hereunder; and to that end First Party will, on the day of the signing of this agreement, issue and give notice to the County or District Attorney of Brazoria County, Texas, to file delinquent tax suits against all persons, individuals, associations and corporations owning property on which the taxes are delinquent, and upon his failure or refusal to file and prosecute such suits to judgment, then an attorney to be designated by Second Party, employed to file and prosecute said suits to judgment and collection. The expenses incident to the employment of said attorney shall be borne by Second Party.

"XIII. Second Party obligates itself to begin said work at once and to complete same on or before eighteen (18) months after date hereof, except as provided in section 3 of Paragraph X hereof.

"XIV. First Party agrees and is obligated to pass all necessary proceedings, orders, and resolutions to make this contract legal, and to appropriate and set aside thirty-three and one-third per cent (33-⅓%) of said delinquent taxes, penalties

and interest of every character collected, for the purpose of paying principal of said warrants as same accumulates, that such orders, and proceedings making provisions for payment of principal of said warrants will be adopted by the Commissioners' Court of Brazoria County, Texas, and at said time said Court will ratify this contract.

"XV. It is further agreed by and between the said parties hereto that First Party shall furnish to the Second Party sufficient office room or space in which to work in the preparation of said book or books; and accessability to and use of proper and appropriate records in said County, in so far as said County has possession and control of said records, in the compilation of data therefor; and that Second Party is obligated to furnish stationery and printing necessary for the completion of said contract, including permanent plat book or books and map or maps contracted to be furnished herein, of a quality satisfactory to the Commissioners' Court of Brazoria County, Texas.

"Second Party agrees to furnish First Party, within fifteen (15) days after the execution hereof, a good and sufficient surety bond payable to the County Judge of Brazoria County, Texas, and his successors in office, in the sum of Twenty-Five Thousand Dollars ($25,000.00), conditioned on the faithful performance of this contract by Second Party.

"Witness our hands in duplicate originals this the 17 day of June, A.D.1929.

"Brazoria County, Texas,
"By Scott Gaines, County Judge.
"Neal Giesecke,
"Commissioner Precinct No. 1.
"E. H. Mays,
"Commissioner Precinct No. 2.
"C. W. Massey,
"Commissioner Precinct No. 3.
"F. LeRibeus,
"Commissioner Precinct No. 4.
"Attest:
"W. R. Bratton (Seal),
"County Clerk of Brazoria County, Texas, First Party.
"Mills-DeWitt Company    Second Party
"(Seal) By R. B. DeWitt, President.
"Attest:
"Austin Y. Bryan, Jr.,
"Ass't Secretary."